[No. 36173. Department One. March 21, 1963.]

ELNORA MILLER, *Appellant,* v. PAYLESS DRUG STORES OF
WASHINGTON, INC., *Respondent.**

*William C. Harrison,* for appellant.

*Frank H. Johnson* and *John D. MacGillivray,* for respondent.

*Reported in 379 P. (2d) 932.

Hale, J.—Appellant, plaintiff below, brought an action for injuries sustained when she slipped and fell to the floor of defendant's store. At the close of the evidence, defendant challenged the sufficiency. The challenge was upheld, and judgment of dismissal accordingly entered. Plaintiff appeals.

At the time of the fall, appellant was a strong, active woman of 62 years of age and had been employed for many years as a practical nurse. She was, on this occasion, wearing a whipcord skirt and shoes which could readily be classified as "sensible." At least, no issue was made that the shoes were improper. The fall occurred when appellant was walking in the hardware department of respondent's store, in the basement. In that area, the floor was of concrete with an asphalt tile surface. Other than the slickness of the surface, no claim was made that the floor was faulty, uneven, irregular, or otherwise dangerous. Only one question arises in the case which requires an answer: Was there sufficient evidence to submit the facts to the jury?

That the learned trial judge sought earnestly to apply the law of this state to the case is clearly demonstrated in the ruling on the challenge in his oral opinion, which capably reviews the facts and the law. The opinion states as follows:

"Plaintiff's evidence must be accepted as true, and she must be given the benefit of all inferences which can reasonably be drawn therefrom. . . .

"Mrs. Miller testified, in substance, merely that she walked into the Payless Drugstore, slipped and fell in the aisle, and that she left a mark on the floor some 15 inches long, and of the estimated depth of the thickness of a fingernail. She said the floor looked slippery, and that in her opinion there was an excess of wax on the floor.

" . . .

"I think it is important to consider not only what is in evidence but what is not. There is no testimony that this particular product which was used was an improper product, there is no testimony that the manner of applying it was improper, there is no testimony of any unusual localized

accumulation of material, whether it was wax or a polyethylene compound, there is no testimony that others who used the floor fell immediately before or after Mrs. Miller fell.

"  .  .  .

"  .  .  . There is no presumption of negligence arising from the fact that somebody falls on a slippery floor, a floor made slippery by the application of wax or any other substance. In order for the plaintiff to recover in this case she has the burden of proving either that the product was improper, or that the manner of its use was improper."

■ The trial judge made appropriate reference to the doctrines which govern the court's decision on conclusory motions. In ruling upon a challenge to the sufficiency of the evidence, a motion for a directed verdict, or a motion for judgment notwithstanding the verdict, no element of discretion is involved, and such motions can be granted only when it can be held as a matter of law that there is no evidence or reasonable inference therefrom to sustain a verdict for the opposing party. *Lambert v. Smith*, 54 Wn. (2d) 348, 340 P. (2d) 774; *Williams v. Hofer*, 30 Wn. (2d) 253, 191 P. (2d) 306.

■ A motion for nonsuit admits the truth of the evidence, and all inferences arising therefrom, of the party against whom the motion is made. It requires that the evidence be interpreted most strongly against the moving party and most favorably to the opposing party. It is only when the court can say that there is no evidence at all to support the plaintiff's claim that the motion can be granted. *Lambert v. Smith, supra; Williams v. Hofer, supra; Music v. United Ins. Co.*, 59 Wn. (2d) 765, 370 P. (2d) 603.

■ Respondent relies largely upon the holdings expressed in *Pement v. F. W. Woolworth Co.*, 53 Wn. (2d) 768, 337 P. (2d) 30, but the holding in that case clearly would not control the decision at bar. A precise allegation in the complaint there asserted that the fall was caused by the negligent application of a specific floor preparation, and the issue was joined by respondent's denial that this particular substance was either negligently applied or slip-

pery in nature. The jury resolved this issue of fact in favor of the respondent store, and the decision on appeal turned largely on the propriety of an instruction which was given on unavoidable accident. We did, in that case, however, reassert the familiar rule and declare that negligence is not proven by simply showing that the floor has been waxed and as a result has become smooth or even slippery to a degree. See *Kalinowski v. Y.W.C.A.,* 17 Wn. (2d) 380, 135 P. (2d) 852. This rule the trial judge sought to apply in the present instance. The *Kalinowski* case is hardly authority for the case at bar other than, of course, it too states the very general rule that negligence is not established alone from the fact that the floors have been waxed or are smooth or perhaps even slippery. In the *Kalinowski* case, the plaintiff had spent the evening dancing on a floor which she knew had been treated with a mixture of corn meal and a waxlike preparation designed to keep it smooth for dancing. There the plaintiff testified that she knew the substance would accumulate on the soles and heels of her shoes and that at the time she slipped and fell she was wearing 2-inch heels upon which she knew there was an accumulation of this slippery substance. The net effect of the holding is that the defendant was not negligent in making its floors smooth for dancing purposes.

Our problem here is to ascertain whether the general rule, as expressed in *Pement* and *Kalinowski* and a host of other cases therein cited, took the case from the jury. Our inquiry is directed to find an answer to this question: Did the appellant submit evidence from which a jury could reasonably infer that the surface coating on the floor had been either negligently applied or that the floor was smooth to a degree rendering it dangerous to business invitees?

Recourse to the testimony itself gives us the best answer.

Appellant testified as follows:

"A. . . . I was right even with the first aisle to my left . . . and my right foot just slipped out from under me. . . . I slid for 15 inches, and it showed a heavy mark where I had fell, and after the fall I was sitting in

a chair that the clerk had given me, and I took my foot like this (indicating) and my foot would just slip from me just like that (indicating), just like I was on slick ice, and it showed a heavy mark there.

"I have been a housewife for years, and I have taken care of a home, I have waxed floors dozens of times. It was this wax that did it, it was very very heavy.

"So, I took my shoe off, and there was wax on it, kind of whitish grey, and I scraped that off with a nail file. . . ."

The statement of facts contains further evidence from the appellant:

"Q. What kind of mark did you make on the floor? A. A deep mark through the deep heavy wax, a mark there on the floor. . . . A. I would say this was all of 15 inches, and it was solid and it was about as wide as my finger. . . ."

Appellant also testified that, upon being seated in a chair supplied by a clerk, she made motions with her foot in the presence of the clerk to demonstrate the slipperiness of the floor. She testified directly in this regard:

"A. . . . I just showed her that because I wanted her to see how slick that was . . . I showed her how my foot would just slide out, just like it was ice (indicating)."

Appellant further testified that one of respondent's clerks furnished her with a fingernail file which she used in scraping the wax from her shoe, and also that she buffed her heels with a fingernail file because she was afraid that it would be unsafe to walk on the floor. She testified that she has used liquid wax in her home ever since it was on the market and that she knew when a floor was overwaxed. She testified that the floor was overwaxed. Appellant's shoes and her skirt were admitted in evidence, and she testified that her skirt contained spots of a greasy, waxlike substance and that this accumulation came from the floor where she had slipped.

Respondent counters this testimony by showing that its floors at the time of the accident and for a considerable

period of time prior thereto had not had wax applied to them; that they used a floor surfacing product known as "Style" which is a polyethylene substance and is not a wax; that this substance would be known as a plastic; and that thus the appellant was utterly mistaken in her references to the waxing of the floors.

There is no magic in the use of the word "wax" in a case of this type. It is a generic term employed by all, and in ordinary usage described the act of applying a temporary surfacing material for the care and maintenance of floors. Used as a noun, it generally describes the substance or compound so applied to the floor surface. Whether or not such a compound contains any of the substances known to the chemists, physicists or biologists as a wax, we think would be immaterial. We are doubtful if many housewives, or department store managers for that matter, know that when the word "wax" is employed in general usage, its restricted meaning describes any one of a number of substances of plant or animal origin containing esters, frequently fatty acids and higher hydrocarbons and distinguished from fats as containing esters of higher monohydroxy alcohols instead of esters of glycerol.

It is well known that the word "wax" is frequently employed as a verb by housewives to describe their actions in applying a floor surfacing compound to the floors of their homes and as a noun to describe the compound. Indeed, respondent's store manager, while stoutly maintaining that the floors were treated with a polymer or polyethylene substance called "Style," which contained no wax but which rather provided a plastic coating for the floor, testified as follows:

"Q. Does it melt the old wax? A. Well, it takes it off. Q. The wax remains in solution with the dewaxer? A. They mop it off. Q. It remains with the dewaxer, does it? A. I can't tell you. . . . Q. But they mop it all up with one mopping, is that right? A. Yes, but it is not a wax, however. Q. It is a dewaxer? A. But what it takes off isn't wax."

The store manager then testified in detail as to the frequency with which the product "Style" was applied, and the following colloquy then occurred on direct examination:

"Q. Who is in charge of their work schedule? A. I am—As far as the wax is concerned?"

The appellant must thus stand or fall on whether the evidence herein recited is sufficient to make a jury case. We are of the opinion that the appellant's evidence in summary showed the following, prima facie:

1. That she fell on a floor so surfaced as to leave a mark 15 inches long, as wide as one's finger, and as deep as a fingernail is thick, which she characterized as "deep thick mark;"

2. that appellant, while seated in a chair, demonstrated to one of respondent's clerks the degree of slipperiness by sliding her foot back and forth across the waxy surface;

3. that she described the surface where she had fallen as being "just like it was ice;"

4. that as a housewife she had waxed floors dozens of times and that the compound on the floor surface was "very very heavy;"

5. that in the presence of respondent's clerk, and with a fingernail file furnished by the latter for that purpose, appellant scraped the compound from the soles and heels of her shoes and buffed her heels to roughen their surfaces, and, at the same time, pointed out to the clerk that the floor was very slippery; and

6. that she introduced in evidence the clothing worn by her on the day of the fall for the visual and tactile examination by the jury and scientific examination by experts in the field of chemistry, if either party so desired.

We think that, under the rules governing challenges to the sufficiency of the evidence and motions for nonsuit, a prima facie case at least was made out. It is our view, therefore, that the evidence submitted by the appellant warranted a jury trial.

Accordingly, we reverse the judgment of the trial court and remand for a new trial.

OTT, C. J., HILL, ROSELLINI, and HUNTER, JJ., concur.