[No. 912-3.   Division Three.   April 17, 1975.]

JAMES B. PRESLEIGH et al, *Respondents*, v. JACK L. LEWIS et al, *Appellants*.

*Gail K. Holden* and *Turner, Stoeve, Gagliardi & Kennedy*, for appellants.

*F. Lawrence Taylor, Jr.,* and *Gordon & Ripple*, for respondents.

GREEN, J.—Defendants appeal from a judgment n.o.v. or in the alternative a new trial.

On January 20, 1973, a physician gave the defendant, Jack Lewis, an anti-nauseant injection in the arm for treatment of a flu condition. Defendant left the physician's office, got in his car and while driving home he blacked out. His car left North Crestline Street in Spokane and crashed into a house owned by the plaintiffs, James E. and Barbara J. Presleigh, causing substantial damage.

The evidence shows that on January 19, 1973, the defendant, while at work, began feeling ill and thought he was

suffering from the flu. His physician prescribed medication and advised defendant to come to his office the next morning. At that time, he received an injection in the arm. He testified that his physician warned him the shot could affect his driving:

Anyway, he gave me the shot and I put my shirt on and started to put my coat back on, and he said "Where are you going", and I said, "I am going home, I am sick," and he said "The reason I asked is because I don't want you to drive downtown or out on the freeway or someplace where you are going to be in traffic because this shot could have a tendency to make you drowsy, some people it does, some people it doesn't, and I said, "Is it okay if I drive home," and he said "Oh yah, fine, but watch for drowsiness, if you feel like you are getting sleepy, pull over, roll the window down, make sure you are okay, and go on home," and so I said "Okay," and didn't think much more about it then.

On his way home, defendant went by his sister's house for about 5 minutes and then proceeded towards home. He stopped at a red light and when the light turned green he went through the intersection and "that's the last thing I remember." He was awakened in his car by someone knocking on the window and when he opened his eyes he saw a pile of debris on the hood of his car.

The trial court, in granting judgment n.o.v., relied upon *Kaiser v. Suburban Transp. Sys.*, 65 Wn.2d 461, 398 P.2d 14, 401 P.2d 350 (1965). While the facts are different here, the pronouncements in *Kaiser* direct the decision here. In *Kaiser*, a driver of a bus lost consciousness and struck a telephone pole, causing injury to a passenger. The driver had been taking a drug prescribed by his doctor for treatment of a nasal condition. He claimed his doctor gave him no warning as to possible side effects of the drug. A few miles before the accident, he felt groggy and drowsy and blacked out or went to sleep shortly before the bus left the road. The passenger sued the driver and the bus company who, in turn, cross claimed against the doctor and his employer. The doctor and his employer were dismissed because the

evidence showed no standard of care to which the doctor was bound and even if negligent in not warning, the driver's negligence in proceeding after he became drowsy was an intervening cause. A verdict was directed against the bus driver and the bus company. All parties appealed. On appeal, the court said, at page 469:

We are convinced from this record . . . that the plaintiff is entitled to judgment as a matter of law on the issue of liability against either the bus company and the driver, or Group Health and the doctor, or both, depending upon certain factual determinations by the jury which we hereinafter specify in our directions for remand.

The court then held:

The judgment of the trial court entered upon the jury verdict is reversed and remanded for a new trial on all issues subject to the following:

The jury should be directed that . . . (c) in the *event the jury finds that a warning of the side effects of the drug was given to the bus driver, then the verdict shall be against the bus company and the driver only.*

(Italics ours.)

Thus, the issue presented is whether the defendant, having been warned that he might become drowsy, is liable as a matter of law when he "blacks-out" or goes to sleep while driving without first becoming drowsy.

It is obvious that an automobile may become a dangerous instrumentality. One who undertakes to drive his automobile has a duty to drive it in a reasonable manner so as to not injure another in his person or property. The defendant breached that duty as a matter of law when he undertook to drive his automobile knowing his ability to drive in a reasonable manner might be affected. The fact that he did not know the precise way in which his driving might be affected and he did not in fact become drowsy before he blacked out or went to sleep does not relieve him from a breach of this duty. Thus, defendant was negligent as a matter of law for driving after he was warned that his driving could be affected by the injection and must be held

liable for the damages resulting therefrom. *Kaiser v. Suburban Transp. Sys., supra; see* W. Prosser, *Law of Torts* § 29 (3d ed. 1964); 28 A.L.R.2d 12, 40 *et seq.* (1953); *Theisen v. Milwaukee Auto. Mut. Ins. Co.,* 18 Wis. 2d 91, 118 N.W.2d 140, 143-44 (1962); *Wisconsin Natural Gas Co. v. Employers Mut. Liab. Ins. Co.,* 263 Wis. 633, 58 N.W.2d 424, 426 (1953).

■ We are mindful of the rule that in granting a judgment n.o.v. all of the evidence must be considered in a light most favorable to the nonmoving party. It is undisputed that defendant was warned that his driving might be affected. The fact that he and his physician believed it was safe for him to drive home does not relieve him from his duty not to drive when he knew his driving might be impaired by the injected drug. Defendant gambled and lost.

In view of our holding, the assignments of error raised with respect to instructions given or proposed need not be considered.[1]

Affirmed.

Munson, J., concurs.

McInturff, C.J. (dissenting)—

The man who laugh'd but once, to see an ass
Mumbling to make the cross-grain'd thistles pass,
Might laugh again to see a jury chaw
The prickles of unpalatable law.

Dryden, *The Medal.* The above is apropos because of the delicate problem posed by the law in this case. The plain-

[1] In granting judgment n.o.v., the trial court held that plaintiff's proposed instructions relating to RCW 46.61.510 should have been submitted to the jury. That statute provides:

It is unlawful and punishable as provided in RCW 46.61.515 for any person who . . . under the influence of any narcotic drug or who is under the influence of any other drug to a degree which renders him incapable of safely driving a vehicle to drive a vehicle within this state. The fact that any person charged with a violation of this section is or has been entitled to use such drug under the laws of this state shall not constitute a defense against any charge of violating this section.

*See also* RCW 46.61.506(1):

tiffs' home was damaged through no fault of theirs and the jury in effect stated that the defendant was not liable for the damage because he was not negligent.

Initially, the jury's verdict was that of dismissing the complaint of the plaintiff. The law protects that verdict by requiring that the court, in deciding whether to grant a judgment notwithstanding the verdict, view the evidence in a light most favorable to the nonmoving party and all material evidence favorable to that party must be taken as true.[2] The court must be able to say as a matter of law that neither the evidence nor reasonable inferences from the evidence are sufficient to sustain the verdict.[3] No element of discretion is vested in the trial court in ruling upon the motion. If there are justifiable inferences from the evidence upon which reasonable minds might reach conclusions that would sustain a verdict, then the question is for the jury, not for the court. *The motion may be granted only if it can properly be said as a matter of law that there is no evidence or reasonable inference therefrom to sustain a verdict for the nonmoving party.*[4] Therefore, if substantial evidence supports the verdict of the jury, the verdict must stand.[5]

The majority opinion holds that *Kaiser v. Suburban Transp. Sys.*, 65 Wn.2d 461, 398 P.2d 14, 401 P.2d 350

---

It is unlawful for any person who is under the influence of or affected by the use of intoxicating liquor or of any narcotic drug to drive or be in actual physical control of a vehicle within this state.

[2]*Carrico v. Country Store of Salem, Inc.*, 4 Wn. App. 567, 484 P.2d 412 (1971); *Moyer v. Clark*, 75 Wn.2d 800, 454 P.2d 374 (1969); *Smith v. B & I Sales Co.*, 74 Wn.2d 151, 443 P.2d 819 (1968); *Hellriegel v. Tholl*, 69 Wn.2d 97, 417 P.2d 362 (1966); *Meece v. Circle Bar J Boys' Ranch, Inc.*, 10 Wn. App. 740, 742, 519 P.2d 1400 (1974).

[3]*Carrico v. Country Store of Salem, Inc.*, 4 Wn. App. 567, 484 P.2d 412 (1971); *Moyer v. Clark*, 75 Wn.2d 800, 454 P.2d 374 (1969); *Tusnadi v. Frodle*, 8 Wn. App. 239, 505 P.2d 165 (1973).

[4]*Miller v. Payless Drug Stores of Wash., Inc.*, 61 Wn.2d 651, 379 P.2d 932 (1963).

[5]*Grange v. Finlay*, 58 Wn.2d 528, 364 P.2d 234 (1961); *Carrico v. Country Store of Salem, Inc.*, 4 Wn. App. 567, 484 P.2d 412 (1971); *Meece v. Circle Bar J Boys' Ranch, Inc.*, 10 Wn. App. 740, 519 P.2d 1400 (1974).

(1965) dictates their conclusion that the defendant was negligent as a matter of law. I respectfully dissent.

The facts are distinguishable. In *Kaiser* the defendant bus driver took some medication and later became drowsy, eventually losing consciousness. The doctor had failed to warn him of the possible adverse side effects. In the instant case the defendant was given some medication by his physician. Dr. Burns warned that he might become drowsy while driving, and if he did so, he was to pull over and rest until he felt better. He was not warned that he could pass out without first becoming drowsy. On his way home the defendant suddenly lost consciousness without prior drowsiness or warning of any kind. Concerning knowledge, the defendant's testimony is further buttressed by Dr. Burns who stated that it is not possible to predict this result and that it had never happened to any of his patients before. He also testified that if he felt it would have been dangerous for the patient to drive he would have had his nurse take him home.

The majority's opinion adopts *sub silentio* the rule of strict liability applied in the case of a "sleeping driver,"[6] and applies it to the case of a "drugged driver" which our court in *Kaiser* specifically refused to do. In *Kaiser* at page 466, the court stated:

> However, the present case is not the case of a "sleeping driver," at least not as we must view the evidence and inferences therefrom. It is the case of a "drugged driver." A driver who becomes suddenly stricken by an unforeseen loss of consciousness, and is unable to control the vehicle, is not chargeable with negligence. [Citations omitted.] We cannot say, as a matter of law, that the driver was negligent by falling asleep or fainting at the wheel, even in view of the premonitory systems he experienced.

The court, continuing at page 468, said:

> Knowledge and conscious appreciation of the significance of facts constituting premonitor warning of sleep or inca-

[6] *Theisen v. Milwaukee Auto. Mut. Ins. Co.*, 18 Wis. 2d 91, 118 N.W.2d 140 (1962).

pacity to the driver is essential to sustain the bus driver's liability. The conclusion by the trial court, as a matter of law, that the driver did have warning and conscious awareness cannot stand in the face of the driver's testimony that he did not, which is also buttressed by the medical testimony.

The majority has rested its decision to some degree on the judgment of the court which states that "in the event the jury finds that a warning of the side effects of the drug was given to the bus driver, then the verdict shall be against the . . . driver only." The majority concludes from that judgment of the court that any warning of side effects makes the driver guilty of negligence as a matter of law.

Knowledge or a conscious awareness of the fact that one might suddenly lose consciousness as a result of medication is required before the label "negligence" can be identified with the defendant's actions. The majority opinion's solution that the defendant "knew his ability to drive in a reasonable manner might be impaired" by instantaneous unconsciousness is not supported by the record. The defendant was told that he would become drowsy but never told that he would become unconscious without becoming drowsy first. There was no way for the defendant to realize that the possibility of sudden unconsciousness could take place. Therefore, there is a reasonable hypothesis upon which the jury could have concluded that the defendant had no knowledge of the possibility of sudden unconsciousness and, thus, could not be held negligent and consequently liable for the damage to the home.

Whether the defendant was negligent under these facts was clearly a question of fact for the jury. The jury decided that question in favor of the defendant. I would therefore reverse the trial court's decision granting a judgment notwithstanding the verdict.