# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CHRISTOPHER W. SARTIN and ROSE M. RYKER, individually and as a marital community; and JILL SACKSTEDER and CHARLES SACKSTEDER, individually and as a marital community, | No. 53248-4-II |
| Appellants, | |
| v. | |
| THE ESTATE OF ALONZO McPIKE; PIERCE COUNTY PUBLIC TRANSPORATION BENEFIT AREA CORPORATION, a/k/a/ PIERCE TRANSIT; and MULTICARE HEALTH SYSTEM, a Washington corporation d/b/a TACOMA GENERAL HOSPITAL and MULTICARE OCCUPATIONAL MEDICINE; and RICHARD GILBERT, MD, individually, | PUBLISHED OPINION |
| Respondents. | |

MAXA, J. – Christopher Sartin appeals the trial court's dismissal on summary judgment of a personal injury lawsuit he filed against the Estate of Alonzo McPike and his employer Pierce Transit, and against Dr. Richard Gilbert and his employer MultiCare Health System (collectively, Dr. Gilbert). The lawsuit arose from an incident in which McPike lost consciousness due to cardiac arrest while driving a Pierce Transit bus, and the bus collided with a vehicle Sartin was occupying. A few months earlier, Dr. Gilbert had conducted a medical examination on McPike as required for renewal of McPike's commercial driver's license (CDL) and had determined that McPike qualified for a CDL medical certificate.

Sartin asserted that (1) although the general rule is that a vehicle driver who suddenly loses consciousness is not negligent unless the loss of consciousness was reasonably foreseeable to the driver, McPike was negligent because his numerous health problems made his loss of consciousness foreseeable; (2) Pierce Transit was negligent for failing to monitor McPike's medical conditions and order fitness for duty evaluations; and (3) Dr. Gilbert was negligent for issuing McPike a CDL medical certificate despite his health problems.

We conclude that (1) as matter of law, it was not reasonably foreseeable to McPike that he would lose consciousness even though he had several preexisting health problems; (2) there is no genuine issue of fact regarding Pierce Transit's independent liability for failure to monitor McPike's medical conditions because there is no evidence that fit for duty examinations would have disqualified McPike from driving a bus; and (3) without deciding Dr. Gilbert owed or breached a duty to Sartin, the trial court did not err in striking Sartin's expert's testimony about cardiac issues and causation, and therefore there is no genuine issue of fact regarding causation.

Accordingly, we affirm the trial court's grant of summary judgment in favor of McPike's estate, Pierce Transit, Dr. Gilbert and MultiCare.

FACTS

McPike was 58 years old at the time of the accident. He had worked for Pierce Transit as a bus operator for approximately 18 years. He had never experienced cardiac arrest or a sudden loss of consciousness while driving a bus.

*Regulatory Background*

Pierce Transit bus drivers must maintain a CDL. Federal and state statutes establish Washington's requirements for issuing CDLs. Obtaining a valid CDL requires a driver to undergo an annual medical examination with a medical examiner registered on the National

2

Registry of Certified Medical Examiners list to ensure that he or she is physically qualified to operate a commercial vehicle. Washington also has created a waiver program for intrastate drivers who otherwise would be disqualified for having insulin-dependent diabetes.

At the CDL medical examination, the driver is advised about the limited scope of the exam for employment purposes only. The driver fills out a form called the Department of Transportation (DOT) long form before the physical examination. The medical examiner reviews the driver's medical history and conducts a complete physical examination. The examiner has the authority to grant or deny a one year medical certificate. The examiner also may issue only a three-month "short card" certificate if the driver has a medical condition that must be treated or resolved.

*McPike's Medical History*

Dr. Mark Brooks was McPike's primary care physician for over 20 years. He monitored McPike and coordinated care with various specialists. Dr. Brooks acknowledged that McPike had multiple health problems, including diabetes mellitus, hypertension, high cholesterol and obesity, that increased his risk of developing a heart condition at some time in the future. However, Dr. Brooks stated that McPike never reported precursor signs or symptoms of sudden cardiac arrest. McPike also had no history of coronary heart disease or any other serious heart conditions.

In 2012, Dr. Brooks referred McPike to Dr. Zhiyu Wang to treat McPike's diabetes. Dr. Wang monitored McPike's condition until shortly before the accident.

In November 2012, Dr. Timothy Larson conducted a cardiac workup on McPike. Dr. Larson subjected McPike to a number of tests, including an electrocardiogram (ECG) and a cardiac echocardiogram (ECHO). Testing revealed two types of irregular rhythms: premature

atrial contractions (PACs) and premature ventricular contractions (PVCs). Dr. Larson considered the findings benign. The ECHO also showed normal heart function and no sign of any coronary artery disease. Dr. Larson did not recommend a follow up.

In January 2014, McPike took two separate leaves of absence that totaled up to two weeks to manage his diabetes. Pierce Transit did not order a fitness for duty examination upon his return.

In November 2014, Dr. Kirk Harmon performed McPike's annual CDL medical examination. He recorded McPike's blood pressure as 150/72, which was too high for a one year qualification but sufficient for a three month short card. Dr. Harmon informed McPike that he needed to see his primary care physician to get his blood pressure under control. He also recommended that McPike undergo a screening sleep study for sleep apnea.

Dr. Harmon sent Dr. Brooks a note requesting three blood pressure readings under 140/90. Dr. Brooks saw McPike several times in the next few months and personally took McPike's blood pressure. He recorded readings of 134/70 on November 28, 138/68 on December 16, and 132/70 on January 14, 2015. Dr. Brooks also certified that McPike's blood pressure was under adequate control and that he could drive a commercial vehicle.

In December 2014, McPike underwent a sleep study and was diagnosed with severe sleep apnea. He began using a continuous positive airway pressure (CPAP) machine to control his sleep apnea.

In January 2015, McPike met with Dr. Gilbert for another CDL medical examination. Dr. Gilbert reviewed McPike's medical history and conditions and noted that he was taking insulin for his diabetes. He also reviewed an intrastate waiver application signed by Dr. Wang certifying that McPike's diabetes was not likely to interfere with his ability to drive safely. Dr.

Gilbert also reviewed McPike's sleep apnea diagnosis and noted that he was using a CPAP machine to control it.

Dr. Gilbert reviewed McPike's diagnosis of hypertension and reviewed the compliance letter that Dr. Harmon issued in November 2014. He noted Dr. Brooks' recent blood pressure results and certification that McPike's hypertension was under control and that his blood pressure did not prevent him from driving a commercial vehicle. However, Dr. Gilbert measured McPike's blood pressure at 162/64.

Finally, Dr. Gilbert identified an irregular cardiac rhythm, likely PACs. McPike informed him that he had a cardiac workup done within the last year or so and that the results were normal. However, Dr. Gilbert could not locate those records. Dr. Gilbert did not think that McPike's cardiac rhythm likely would interfere with his ability to safely operate a commercial motor vehicle. Dr. Gilbert issued McPike a one year CDL medical certificate.

On March 3, 2015, McPike had a follow up visit with Dr. Wang. Dr. Wang noted that McPike's control of his diabetes had declined somewhat due to an irregular diet and uncontrolled eating because of his work schedule. Dr. Wang recommended that McPike monitor his blood gas levels. At that time, McPike's weight was 305 pounds and his blood pressure was 140/78. His cardiovascular exam was normal.

On March 27, McPike had a follow up visit with Dr. Brooks regarding his hypertension. Dr. Brooks noted that McPike's blood pressure was under control and that he had no cardiac symptoms. McPike did not complain of any cardiac issues and there were no abnormalities found on cardiopulmonary exam. Dr. Brooks saw no evidence that McPike had coronary artery disease or that he needed a cardiac referral. The assessment was stable hypertension.

*May 2015 Accident*

On May 26, 2015, McPike reported for work at Pierce Transit and began his usual bus route around 4:30 AM. Around 8:30 AM, passengers noticed that McPike was slumped in his seat while the bus was in motion. McPike lost control of the bus, which collided with the back of another vehicle. Sartin was a passenger in that vehicle.

Doctors later determined that McPike had suffered a cardiac arrest. Sudden cardiac arrest occurs when the electrical system to the heart malfunctions, often causing immediate loss of consciousness.

When emergency responders arrived at the scene of the collision, they found McPike unconscious with no heartbeat. They were able to restore the heartbeat, and McPike was hospitalized in a coma. Doctors conducted a cardiac work-up while McPike in the hospital. The reviewing doctor did not detect any cardiac abnormalities other than the electrical malfunction. The reviewing doctor's findings were not consistent with coronary artery disease. McPike ultimately died four weeks later without regaining consciousness.

Pierce Transit buses are equipped with video cameras and footage from the cameras is available for preservation for 30 days. Pierce Transit preserved only eight minutes of footage from the day of the collision, and only approximately two minutes were immediately preceding the accident.

*Complaint and Summary Judgment*

Sartin filed a complaint for personal injuries against McPike's estate and Pierce Transit. Sartin later filed a separate lawsuit against Dr. Gilbert and MultiCare. These two lawsuits eventually were consolidated.

In December 2017, McPike's estate and Pierce Transit filed a summary judgment motion on liability, arguing a lack of evidence that McPike's loss of consciousness was foreseeable. The motion was supported by the declaration of Dr. Robert Thompson, a cardiologist and internal medicine specialist. Dr. Thompson gave an opinion that based on McPike's medical history and records, his sudden cardiac arrest was not reasonably foreseeable. McPike's estate and Pierce Transit also submitted the declarations of Dr. Brooks, Dr. Wang and Dr. Gilbert, who opined that McPike's medical conditions did not make him unfit to drive a bus.

In opposition, Sartin submitted the declaration of Dr. David Fletcher, an occupational and environmental medicine specialist and an expert in the medical certification of commercial drivers. Dr. Fletcher gave the opinion that McPike's sudden cardiac arrest and loss of consciousness was reasonably foreseeable because of his preexisting medical problems. Sartin also submitted declarations from two passengers on the bus at the time of the accident who said that McPike had failed to stop at several regular stops on the morning of the accident. One also stated that McPike was demonstrating erratic behavior.

The trial court denied McPike's estate's and Pierce Transit's summary judgment motion. The court later stated that it denied the motion because the declarations submitted raised questions of fact.

In November 2018, McPike's estate and Pierce Transit filed a renewed motion for summary judgment. The basis of the motion was that Dr. Fletcher now had been deposed, and his deposition testimony removed any questions of fact created by the opinions stated in his declaration. The trial court granted the renewed summary judgment motion. The court found that McPike's loss of consciousness was not foreseeable as a matter of law.

Dr. Gilbert subsequently filed a summary judgment motion, arguing that he owed no duty to Sartin because Sartin was not his patient and that there was no evidence that McPike's sudden loss of consciousness was foreseeable or preventable. Dr. Gilbert submitted the declarations of Dr. Peter Kudenchuk and Dr. Andrew Epstein, two cardiac specialists. Both Dr. Kudenchuk and Dr. Epstein gave an opinion that McPike had no evidence of coronary artery disease or any other heart condition either before or after the accident, and that his cardiac arrest was unexpected and unpreventable. Sartin again relied on Dr. Fletcher's declaration. Dr. Gilbert argued that Dr. Fletcher was not qualified to render opinions regarding cardiology issues and causation.

The trial court granted Dr. Gilbert's summary judgment motion. In the summary judgment order, the court stated that it had struck Dr. Fletcher's testimony as to cardiac issues and causation.

Sartin appeals the trial court's summary judgment orders.

## ANALYSIS

### A.     SUMMARY JUDGMENT STANDARD

Summary judgment orders are reviewed de novo. *Mackey v. Home Depot USA, Inc.*, 12 Wn. App. 2d 557, 569, 459 P.3d 371, *review denied*, 195 Wn.2d 1031 (2020). We review all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Id.* But if there are genuine issues of material fact, then the order granting summary judgment must be overturned. CR 56(c); *Mackey*, 12 Wn. App. 2d at 569. There is a genuine issue of material fact when reasonable minds could disagree on the facts controlling the outcome of the litigation. *Mackey*, 12 Wn. App. 2d at 569.

The party moving for summary judgment bears the initial burden to show there is no genuine issue of material fact. *Id.* A moving defendant can meet this burden by demonstrating

8

the plaintiff cannot support his claim with any evidence. *Id.* After the defendant has made such a showing, the burden shifts to the plaintiff to present specific facts that reveal a genuine issue of material fact. *Id.* Summary judgment is appropriate if a plaintiff fails to show sufficient evidence that creates a question of fact about an essential element on which he or she will have the burden of proof at trial. *Id.*

An expert opinion generally is sufficient to create a question of fact and defeat summary judgment. *Strauss v. Premera Blue Cross*, 194 Wn.2d 296, 301, 449 P.3d 640 (2019). But an expert's opinion must be grounded in fact, and statements based solely on speculation or assumptions will not preclude summary judgment. *Id.*

B.      MCPIKE'S LIABILITY – FORESEEABILITY OF LOSS OF CONSCIOUSNESS

Sartin argues that the trial court erred in granting summary judgment in favor of McPike's estate because there are genuine issues of material fact as to whether McPike's loss of consciousness was reasonably foreseeable. We disagree.

1.      Legal Principles

The general rule is that "[a] driver who becomes suddenly stricken by an unforeseen loss of consciousness, and is unable to control the vehicle, is not chargeable with negligence." *Kaiser v. Suburban Transp. Sys.*, 65 Wn.2d 461, 466, 398 P.2d 14, 401 P.2d 350 (1965). The *Restatement (Third) of Torts* states the rule as follows: "The conduct of an actor during a period of sudden incapacitation or loss of consciousness resulting from physical illness is negligent only if the sudden incapacitation or loss of consciousness was reasonably foreseeable to the actor." RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYS. & EMOT. HARM § 11(b) (AM. LAW INST. 2010).

Whether a loss of consciousness is foreseeable to the actor "depends on what information was available to the actor indicating that at some uncertain point in the future the actor might suffer an instance of incapacitation while engaging in a potentially dangerous activity such as driving." *Id.*, cmt. d. Evidence bearing on this issue includes: (1) "the number and frequency of episodes of incapacitation in the past"; (2) "the circumstances of those episodes, insofar as those circumstances bear on the likelihood of a reoccurrence"; (3) "the extent to which medical treatment the actor is receiving can be expected to control the underlying medical problem"; and (4) "whatever advice the actor's physician has provided." *Id.* Foreseeability of loss of consciousness generally is a question of fact for the jury. *Id.*

Only two published Washington cases have addressed a sudden loss of consciousness of a driver, and both involved a driver taking medication. In *Kaiser*, a bus driver lost consciousness and caused an accident because of the side effects of a drug his doctor prescribed. 65 Wn.2d at 462-63. The driver claimed that the doctor gave no warning about possible side effects. *Id.* at 463. However, the driver began feeling groggy and drowsy a few miles before the accident. *Id.*

The court held that the driver could not be found negligent as a matter of law if he was not warned about the drug's side effects. *Id.* at 466-68. "We do not think that one who innocently takes a pill, which is prescribed by a doctor, can be . . . negligent per se unless he has knowledge of the pill's harmful qualities. To hold otherwise would be to punish one who is not culpable." *Id.* at 466. The court further stated, "Knowledge and conscious appreciation of the significance of facts constituting premonitory warning of sleep or incapacity to the driver is essential to sustain the bus driver's liability." *Id.* at 468. Conversely, the driver would be liable if he was warned about the drug's side effects. *Id.* at 469.

The court left open the possibility that a jury could find the driver liable even if he was not warned about the drug's side effects, apparently based on his continuing to drive after he became groggy and drowsy. *See id.*

In *Presleigh v. Lewis*, a driver blacked out and caused an accident after a doctor gave him an anti-nausea injection and warned him that the shot could affect his driving. 13 Wn. App. 212, 212-13, 534 P.2d 606 (1975). The doctor told the driver it was ok to drive home, just not on the freeway or someplace where he would be in traffic. *Id.* at 213. The court stated,

> One who undertakes to drive his automobile has a duty to drive it in a reasonable manner so as to not injure another in his person or property. The defendant breached that duty as a matter of law when he undertook to drive his automobile knowing his ability to drive in a reasonable manner might be affected. The fact that he did not know the precise way in which his driving might be affected and he did not in fact become drowsy before he blacked out or went to sleep does not relieve him from a breach of this duty. Thus, defendant was negligent as a matter of law for driving after he was warned that his driving could be affected by the injection and must be held liable for the damages resulting therefrom.

*Id.* at 214-15.

2. Foreseeability Analysis

    a. McPike Estate's Evidence

McPike's estate and Pierce Transit presented substantial evidence that McPike's loss of consciousness was unforeseeable. Dr. Thompson explained the cause of McPike's loss of consciousness:

> [S]udden cardiac arrest, as suffered by Mr. McPike, occurs when the electrical system to the heart malfunctions and suddenly becomes very irregular (*i.e.*, arrhythmia) . . . . Cardiac arrest symptoms often are immediate and drastic. Cardiac arrest symptoms can include immediate collapse, loss of pulse, loss of breathing, and loss of consciousness . . . . Cardiac arrest and immediate loss of consciousness often occurs without any prior symptoms or warnings, leaving the person completely incapacitated with no time to react.

Clerk's Papers (CP) at 122.

Dr. Thompson stated that sudden cardiac arrest typically occurs in a person with a pre-existing heart condition like coronary artery disease. But McPike's medical records did not show any diagnosis or treatment for any heart condition, including coronary artery disease. Dr. Thompson stated, "Although Mr. McPike had comorbidities known to increase the risk of developing coronary artery disease, Mr. McPike's hypertension, blood pressure, and diabetes had been well-controlled." CP at 123. Dr. Thompson also noted that McPike's medical records did not contain any warnings against driving due to the risk of cardiac arrest or because of his medical conditions.

Dr. Thompson concluded, "Based on his medical history, diagnoses, and treatment, Mr. McPike's sudden cardiac arrest and loss of consciousness in the seconds preceding the collision with the pickup were not reasonably foreseeable." CP at 123. He emphasized that the sudden cardiac arrest was not foreseeable to McPike's treating physicians or his CDL medical examiner. He stated, "[I]f these medical professionals could not reasonably foresee Mr. McPike's cardiac arrest . . ., then, certainly, the cardiac arrest was not reasonably foreseeable to Mr. McPike or to Pierce Transit." CP at 124.

Dr. Brooks confirmed that during the 20 years he treated McPike, "he never gave a history of precursor signs or symptoms of sudden cardiac arrest." CP at 101. Nor did McPike have a history of coronary artery disease or any other heart condition. Dr. Brooks stated, "Although Mr. McPike's comorbidities increased the risk of developing a heart condition at some unknown point in the future, there is no way to know or to predict one's risk of sudden cardiac arrest." CP at 101. Finally, Dr. Brooks concluded that McPike's medical conditions did not prevent him from safely driving a bus.

12

Dr. Wang stated that he saw no indication that McPike's diabetes or any other medical condition affected his fitness to drive a bus. Dr. Wang concluded,

> In my opinion, although Mr. McPike's diabetes mellitus and other comorbidities put him at increased risk for heart disease, the medical evidence available to me while Mr. McPike was under my care did not, at any point, demonstrate that Mr. McPike had actually developed a heart condition. Accordingly, Mr. McPike's sudden cardiac arrest . . . was not foreseeable to me, and I do not believe it would have been reasonably foreseeable to other physicians based on Mr. McPike's medical history and presentation of symptoms (or lack thereof).

CP at 131.

Finally, Dr. Gilbert stated that McPike's diabetes, hypertension, sleep apnea, and irregular cardiac rhythm did not interfere with his ability to operate a commercial motor vehicle. And Dr. Gilbert concluded that McPike qualified for a CDL medical certificate less than four months before the accident.

        b.    Sartin's Evidence

Substantial evidence supporting the moving party's position, standing alone, is not sufficient to allow the grant of summary judgment because conflicting evidence must be viewed in the light most favorable to the nonmoving party. *Mackey*, 12 Wn. App. 2d at 569. However, the presentation of such evidence shifts the burden to the nonmoving party to come forward with specific evidence that creates a genuine issue of material fact. *Id.*

First, Sartin claims that the proper inquiry is not whether McPike's cardiac arrest or loss of consciousness was unforeseeable, but whether the accident fell within a general field of danger that was foreseeable. He relies on *Lee v. Willis Enterprises, Inc.*, where this court stated that "the test of foreseeability is whether the result of the act is within the general field of danger which should have been anticipated." 194 Wn. App. 394, 402, 377 P.3d 244 (2016). Based on this position, Sartin asserts that it must have been foreseeable only that McPike's driving would

13

be affected *in some way*. He argues that McPike's various medical problems should have prevented him from driving a bus, and therefore it was reasonably foreseeable that those problems might affect his ability to drive *in some way*.

However, Sartin's claim is inconsistent with well-settled law regarding sudden loss of consciousness. Both *Kaiser* and the *Restatement* are clear that there is no negligence unless the *loss of consciousness* is foreseeable to the defendant. *See Kaiser*, 65 Wn.2d at 466; RESTATEMENT § 11(b). *Lee* addresses foreseeability in the context of the scope of a legal duty – whether it was foreseeable that the defendant's careless behavior while working around high voltage equipment could cause some injury. 194 Wn. App. at 401-03. Conversely, this case involves the foreseeability of a very specific event – McPike's loss of consciousness.

Second, Sartin offers Dr. Fletcher's declaration as evidence that McPike's loss of consciousness was foreseeable. Dr. Fletcher stated an opinion that McPike's sudden cardiac arrest and loss of consciousness were foreseeable. He stated, "Mr. McPike had several medical conditions, when unmanaged, individually and collectively contributed to his sudden incapacitation that was foreseeable." CP at 343. He further stated that McPike "was at a substantial risk for sudden death due to cardiac disease, based on his cardiac risk profile of the late middle age male, a former smoker/tobacco user who had allegedly quit in 2012, and had a history of hypertension, hyperlipidemia [high cholesterol], diabetes, obstructive sleep apnea along with his morbid obesity." CP at 344. Finally, Dr. Fletcher stated, "This event was hardly unforeseen, as it was predictable based on McPike's medical history, cardiac history, examination findings, and comorbidities." CP at 346.

Dr. Fletcher also relied on research that found having three concomitant medical conditions from a list of 13 conditions was a statistically significant risk factor for vehicle

14

accidents. He noted that McPike had eight of those conditions, showing that his risk of accident was significantly elevated. Dr. Fletcher concluded that because of McPike's combined medical conditions, he was not medically fit to operate a commercial motor vehicle.

c. Analysis

Sartin emphasizes that Dr. Fletcher's opinion that it was foreseeable that McPike would suffer incapacitation because of his multiple medical conditions is sufficient to preclude summary judgment on the issue of foreseeability, which generally is an issue of fact.

However, the question here is whether the loss of consciousness was reasonably foreseeable *to McPike*. RESTATEMENT § 11(b) (stating that the loss of consciousness must be "reasonably foreseeable *to the actor*") (emphasis added). Whether loss of consciousness was reasonably foreseeable to Dr. Fletcher upon review of McPike's medical records is not necessarily determinative. Dr. Fletcher never opines that McPike knew or should have known that sudden loss of consciousness while driving was foreseeable.

In addition, Dr. Fletcher's deposition testimony undermined the relevance of his declaration opinions because he acknowledged that McPike had no notice that he allegedly was unfit to drive. Dr. Fletcher admitted that no medical provider advised McPike that he was not fit to drive a bus. Similarly, Dr. Fletcher admitted that no medical provider told McPike that he could not drive because of his high blood pressure, diabetes, or sleep apnea, or because of his irregular heartbeat.

Further, Dr. Fletcher testified in his deposition that "20 percent of the time the first manifestation of coronary heart disease is sudden death due to cardiac arrhythmia. *And that's what I believe happened here*." CP at 1047-48 (emphasis added). In other words, Dr. Fletcher

15

admitted that McPike had no notice of the heart condition that Dr. Fletcher believed caused his cardiac arrest.

Applying the *Restatement* factors, McPike showed that he never had experienced a loss of consciousness, he had no history of any heart problems that would cause sudden cardiac arrest and his other medical conditions were under control, and none of his doctors believed that it was unsafe for him to drive a bus. *See* RESTATEMENT § 11 cmt. d. Application of these factors supports the conclusion that McPike's loss of consciousness was not foreseeable to McPike as a matter of law. Dr. Fletcher's opinions regarding foreseeability simply do not address this issue.

We hold that there is no genuine issue of fact as to whether the sudden loss of consciousness was foreseeable to McPike.[1]

3. Notice of Impending Loss of Consciousness

Sartin also argues that a questions of fact exists as to whether Sartin's loss of consciousness was sudden. He relies on the declarations of two passengers who were on the bus at the time of the accident. Both stated that McPike had failed to stop at several regular stops. One also stated that McPike was behaving erratically. Sartin claims that this evidence supports a finding that McPike was experiencing symptoms before the accident that should have alerted him to stop driving, which under *Kaiser* and *Presleigh* subjects him to liability.

However, there was no direct evidence that McPike was experiencing symptoms before the accident. Regarding circumstantial evidence, it is not reasonable to infer that McPike was

---

[1] Sartin suggests in an argument subheading that McPike withheld his dangerous medical history from his medical providers and Pierce Transit. He also claims that McPike made misrepresentations to his medical providers to get re-certified. Dr. Fletcher made the same allegation. However, Sartin provides no argument regarding this allegation. Specifically, he does not explain why withholding medical information would affect the foreseeability of McPike's loss of consciousness. Therefore, we do not consider this issue. *See Billings v. Town of Steilacoom*, 2 Wn. App. 2d 1, 33, 408 P.3d 1123 (2017).

experiencing symptoms of a cardiac arrest or had notice that he might lose consciousness simply because he missed stops or was behaving erratically. There are many other reasons why McPike might have acted that way besides experiencing symptoms. Further, Dr. Thompson stated that "[c]ardiac arrest symptoms often are immediate and drastic" and that "[c]ardiac arrest and immediate loss of consciousness often occurs without any prior symptoms or warnings, leaving the person completely incapacitated with no time to react." CP at 122. In light of this unchallenged testimony, it is not reasonable to infer that McPike had symptoms of cardiac arrest for some period of time before he lost consciousness.

Sartin claims that because Pierce Transit destroyed all bus video footage before the accident except for two minutes, under spoliation of evidence principles it must be inferred that the destroyed video would have been detrimental to McPike. But as McPike points out, Sartin did not present this issue to the trial court for resolution. In his opposition to McPike's estate's first summary judgment motion, Sartin stated that he was "not intending for the Court to rule on the spoliation issue as part of this briefing." CP at 155. And Sartin did not raise spoliation in his opposition to the renewed summary judgment motion. We decline to consider an argument not presented to the trial court. RAP 2.5(a).

We conclude that there are no genuine issues of fact as to whether McPike's loss of consciousness was sudden.

4. Summary

We hold that the trial court did not err in granting summary judgment in favor of McPike's estate and Pierce Transit on the issue of whether McPike was negligent in colliding with the vehicle in which Sartin was riding.

17

C.     PIERCE TRANSIT'S LIABILITY – FAILURE TO MONITOR MCPIKE'S MEDICAL CONDITIONS

Sartin argues that Pierce Transit is subject to liability independent of McPike's liability. He claims that Pierce Transit had a duty to ensure McPike was physically able to drive a bus safely, and that it breached this duty by failing to monitor McPike's multiple health conditions. Sartin asserts that Pierce Transit should have ordered McPike to undergo fitness for duty evaluations, which would have revealed that McPike was physically unqualified to drive.  Pierce Transit argues that there is no genuine issue of fact regarding proximate cause because Sartin presented no evidence that a fitness for duty evaluation would have revealed a disqualifying condition.  We agree with Pierce Transit.[2]

Proximate cause is an essential element of negligence liability.  *Ehrhart v. King County*, 195 Wn.2d 388, 396, 460 P.3d 612 (2020).  The two aspects of proximate cause are cause in fact and legal cause.  *Collins v. Juergens Chiropractic, PLLC*, 13 Wn. App. 2d 782, 794, 467 P.3d 126, 133 (2020).  "Cause in fact refers to the physical connection between an act and an injury— whether, but for the act, the injury would not have occurred."  *Id.*  Legal cause refers to a " 'policy determination[ ] as to how far the consequences of a defendant's acts should extend.' "  *Id.* (quoting *N.L. v. Bethel Sch. Dist.*, 186 Wn.2d 422, 437, 378 P.3d 162 (2016)).

Dr. Fletcher stated an opinion that Pierce Transit should have ordered a fitness for duty evaluation in January 2014 when McPike took time off to manage his diabetes.  But Dr. Fletcher

---

[2] Pierce Transit also argues that (1) it did not have access to McPike's CDL examination forms or other medical records, (2) there is no evidence that the need for a fitness for duty evaluation was triggered in 2015, and (3) Dr. Fletcher's opinion that a more thorough workup would have revealed coronary artery disease is unsupported.  Because we find no genuine issue of material fact regarding proximate cause, we do not address these arguments.  *See Mackey*, 12 Wn. App. 2d at 569 ("Summary judgment is appropriate if a plaintiff fails to show sufficient evidence to establish a question of fact as to the existence of an element on which he or she will have the burden of proof at trial.").

admitted that he had no evidence that McPike would not have passed the evaluation, saying that whether he would have passed would involve speculation.

Dr. Fletcher also opined that Pierce Transit should have ordered a fitness for duty evaluation in 2015. He believed that a cardiac workup in the spring of 2015 would have revealed that McPike had coronary artery disease. However, Dr. Fletcher stated that whether coronary artery disease would be a disqualifying factor depends upon the severity of the condition and the treatment. And he admitted that he had no idea the extent of the coronary artery disease that he believed McPike had.

Sartin did not present any evidence that but for Pierce Transit's failure to monitor McPike's medical condition, the accident would not have occurred. Therefore, there is no genuine issue of fact as to whether any negligence by Pierce Transit was a proximate cause of McPike's accident. We hold that the trial court did not err in granting summary judgment in favor of Pierce Transit.

D.   DR. GILBERT'S LIABILITY – MEDICAL NEGLIGENCE

Sartin argues that the trial court erred in granting summary judgment in favor of Dr. Gilbert because Dr. Gilbert is subject to liability for negligently issuing a CDL medical certificate to McPike. Sartin claims that although he was not Dr. Gilbert's patient, Dr. Gilbert owed a duty to members of the public like Sartin to exercise care in issuing CDL medical certificates because of his relationship with McPike. Sartin also argues that the trial court erred in striking Dr. Fletcher's declaration regarding cardiac issues and causation.

We hold that the trial court did not err in striking Dr. Fletcher's declaration regarding cardiac issues and causation, and as a result there are no genuine issues of fact as to whether any

19

alleged negligence was the proximate cause of Sartin's injury. Therefore, we need not decide whether Dr. Gilbert owed a duty to Sartin and whether Dr. Gilbert breached that duty.

Sartin's theory of liability against Dr. Gilbert apparently is that because of McPike's multiple medical conditions, Dr. Gilbert should have done a more thorough evaluation, including a full cardiovascular workup, before issuing him a CDL medical certification. Sartin claims, based on the testimony of Dr. Fletcher, that such an evaluation would have revealed that McPike had coronary heart disease and would have precluded Dr. Gilbert from issuing the certification. Dr. Gilbert's asserts that there is no admissible evidence that his alleged negligence was a proximate cause of McPike's accident.

1. Admissibility of Dr. Fletcher Testimony

The threshold issue is the admissibility of Dr. Fletcher's testimony on cardiac issues and causation. Sartin argues that Dr. Fletcher is qualified to provide opinion testimony on the issue of causation based on his experience as a certified medical review officer and a preventative medicine specialist. Dr. Gilbert disagrees and argues that the issue of proximate cause is based on cardiac issues and Dr. Fletcher is not a cardiac specialist.

In a medical negligence case, the injured party is generally required to provide expert medical testimony to establish causation. *Reyes v. Yakima Health Dist.*, 191 Wn.2d 79, 86, 419 P.3d 819 (2018). The expert must have sufficient knowledge and expertise in the relevant specialty to testify on the issue of causation. *Frausto v. Yakima HMA, LLC*, 188 Wn.2d 227, 232, 393 P.3d 776 (2017). The expert must show that the failure to comply with the applicable standard of care proximately caused the harm incurred. *Keck v. Collins*, 184 Wn.2d 358, 371, 357 P.3d 1080 (2015).

Significantly. "[t]he expert's opinion must be based on fact and cannot simply be a conclusion or based on an assumption if it is to survive summary judgment." *Volk v. DeMeerleer*, 187 Wn.2d 241, 277, 386 P.3d 254 (2016). "When an expert fails to ground his or her opinions on facts in the record, courts have consistently found that the testimony is overly speculative and inadmissible." *Id.*

We review de novo the trial court's decision to exclude expert testimony in conjunction with a summary judgment motion. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). When reviewing the admissibility of expert testimony, we generally look at three elements: whether " '(1) the expert is qualified, (2) the expert relies on generally accepted theories in the scientific community, and (3) the testimony would help the trier of fact.' " *Gilmore v. Jefferson County Pub. Transp. Benefit Area*, 190 Wn.2d 483, 495, 415 P.3d 212 (2018) (quoting *Johnston-Forbes v. Matsunaga*, 181 Wn.2d 346, 352, 333 P.3d 388 (2014)). The expert's testimony cannot be speculative and must be based on the facts in the case. *See Reyes*, 191 Wn.2d at 89.

As a national registry certified medical examiner for CDL medical examinations, Dr. Fletcher was qualified to testify about the appropriate standard of conduct for CDL medical examiners and examinations. However, Dr. Fletcher admitted that he was not a cardiac expert. And he conceded that he would defer to the opinions of cardiac specialists regarding cardiac issues.

Dr. Fletcher's opinions relevant to Dr. Gilbert's liability all involved cardiac issues. He testified that he was certain that McPike had significant coronary artery disease that caused the arrhythmia that resulted in his cardiac arrest. Similarly, he testified that a cardiovascular workup would have revealed coronary artery disease. But he never explained the basis for these opinions

21

in light of the fact that he was not a cardiac expert. And Dr. Epstein, who *was* a cardiac specialist, did not see any clinical basis for Dr. Fletcher's opinions and stated that these opinions were contrary to the objective evidence.

In addition, Dr. Fletcher's opinion that a cardiovascular workup would have precluded McPike from driving was based on speculation. He stated that whether coronary artery disease would be a disqualifying factor depends upon the severity of the condition and the treatment. But he admitted that he had no idea the extent of the coronary artery disease that he believed McPike had.

We hold that the trial court did not err in striking Dr. Fletcher's testimony on cardiac issues and causation.

2.   No Evidence Regarding Causation

Dr. Gilbert argues that in the absence of Dr. Fletcher's testimony regarding cardiac issues and causation, Sartin cannot create a genuine issue of fact whether Dr. Gilbert's failure to order a more thorough workup was a proximate cause of McPike's accident. We agree.

Without Dr. Fletcher's testimony, Sartin has no evidence that a more thorough workup would have discovered coronary artery disease or made any difference. As the nonmoving party, Sartin had an obligation to come forward with affirmative evidence that created a question of fact regarding causation. *See Mackey*, 12 Wn. App. 2d at 569. He failed to do so. And Dr. Gilbert presented contrary evidence. Dr. Epstein, a cardiac specialist, stated that "even if further workup had been performed, it is impossible to say what would have been found or that it would have changed his outcome." CP at 1509.

22

We conclude that there is no genuine issue of fact as to whether Dr. Gilbert's alleged negligence was the proximate cause of McPike's accident. Accordingly, we hold that the trial court did not err in granting summary judgment in favor of Dr. Gilbert.

CONCLUSION

We affirm the trial court's orders granting summary judgment in favor of McPike's estate, Pierce Transit, and Dr. Gilbert and MultiCare.

_____
MAXA, J.

We concur:

_____
LEE, C.J.

_____
GLASGOW, J.