# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON\

## DIVISION II

| | |
|---|---|
| AARON WOODWARD, an individual,<br><br>Appellant,<br><br>v.<br><br>FIAT CHRYSLER AUTOMOBILES, N.V., a foreign corporation, FCA NORTH AMERICA HOLDINGS, LLC; and FCA US LLC, Michigan State and multinational corporations; and THE ROBERT LARSON AUTOMOTIVE GROUP, INC. [d.b.a. Larson Chrysler Jeep Dodge Ram], a Washington State automotive dealership,<br><br>Respondents. | No. 56322-3-II<br><br><br>UNPUBLISHED OPINION |

MAXA, J. – Aaron Woodward was injured when his vehicle was involved in an accident.

He filed a product liability lawsuit against Fiat Chrysler Automobiles, N.V. (and related entities)

and The Robert Larsen Automotive Group, Inc., the manufacturer and seller of his vehicle

(collectively, FCA). Woodward claimed that the accident was caused by the failure of the

vehicle's brakes. He appeals the trial court's denial of his summary judgment motion regarding

liability and the grant of FCA's summary judgment motion.

Because of an issue with the rear wheel speed sensor, the anti-lock brake system (ABS)

on Woodward's vehicle had become disabled. The accident occurred when Woodward entered

an intersection against a red light and collided with another vehicle. Vehicle data showed that

the brakes where not applied until 1.2 seconds before the collision, which was not enough time to stop. But Woodward claimed that he applied the brakes earlier and they did not engage. His lawsuit against FCA alleged that the accident was caused by a defect in the braking system.

We hold that the trial court did not err in granting FCA's summary judgment motion because Woodward presented no evidence that a vehicle defect caused his accident. Accordingly, we affirm the trial court's order granting summary judgment in favor of FCA and denying Woodward's summary judgment motion.[1]

FACTS

*Background*

Woodward purchased a 2020 Jeep Gladiator in December 2019. The Jeep had no accident history, no history of mechanical problems, no alterations, or previous maintenance.

On February 28, 2020 Woodward was driving from Seattle to Portland. South of Olympia, multiple warning lights lit up on the Jeep's dashboard including one for the ABS. Woodward pulled off the road to consult the user manual, which directed him to take the Jeep to the nearest dealership. He continued to drive to Portland to reach the next closest dealership. He experienced no braking problems at that time.

The next day, Woodward started toward the dealership in his Jeep. When he started the car, the ABS warning light was still on. It was raining and the roads were wet. Woodward approached an intersection at which he had a red light. Woodward applied the brakes, but he collided with the side of a car going through the intersection perpendicular to him. Woodward suffered back injuries as a result of the accident.

---

[1] Woodward also argues that we should reverse the trial court's ruling striking his jury demand. Because we affirm the grant of summary judgment in favor of FCA, we do not address this issue.

*Lawsuit and Summary Judgment*

Woodward filed a lawsuit against FCA, alleging that FCA was strictly liable for his injuries because of the "negligent fabrication" and "defective installation" of the braking system on his Jeep caused his accident. Clerk's Papers at 3. Woodward moved for partial summary judgment on liability and FCA also filed a summary judgment motion.

In support of his summary judgment motion, Woodward submitted a report from David Hallman, a consulting engineer with extensive experience in accident investigation. Among other things, Hallman reviewed crash data from the Jeep. Hallman concluded that there was an issue with the rear right wheel speed sensor signal that caused the ABS to become disabled and the ABS warning light to illuminate on the dash. The crash data showed that the brakes were applied 1.2 seconds prior before the collision, and that the front wheels locked and skidded before impact. Hallman stated that the front wheels would not have skidded if the ABS were functional.

FCA submitted the deposition transcripts of Woodward and Hallman. Woodward testified in his deposition that he tried to apply the brakes as he approached the intersection but the Jeep did not slow down. He applied the brakes five or six seconds before the collision but nothing happened. Woodward stated that the car did not skid. He honked his horn as a warning and then the collision occurred.

Hallman testified in his deposition that even if the ABS were not functioning, the vehicle's brakes still would work. He stated that the crash data showed that the brakes engaged before the collision, Woodward applied the brakes pretty hard, and the front wheels skidded. He believed that Woodward's Jeep would have had a better stopping distance on a wet road with the ABS operational, but he could not say how much better. Hallman noted that according to the

crash data, Woodward's speed was approximately 31 miles per hour when the brakes were applied and approximately nine miles per hour at the time of impact. But Hallman could not say whether Woodward could have stopped in time to avoid the collision if the ABS system had been operational.

Hallman testified that he did not have an opinion as to what caused the accident. Specifically, he did not express an opinion that the accident was caused by Woodward's brakes.

FCA also submitted information regarding three inspections of Woodward's Jeep after the accident. Frank Barrett, a vehicle inspector with Engineering Analysis Associates submitted a declaration. He stated that he drove the Jeep and applied the brakes dozens of times, and the brakes functioned as designed.

Uwe Meissner, an accident reconstruction expert, stated that he found no evidence that Woodward's brakes had failed. He emphasized that even if the ABS dashboard light was illuminated, the brakes would not have been disabled. He believed that 1.2 seconds was not enough time to slow the Jeep to a stop before impact and that the accident occurred because Woodward waited too long to apply the brakes.

The Centro Inspection Agency inspected Woodward's Jeep to determine whether the accident was the result of brake failure. The report stated that the brake system was working as expected and no system malfunction was detected. The Jeep was test driven and the brake performance was confirmed.

In response, Woodward submitted a declaration stating that he applied the brakes earlier than 1.2 seconds before impact. He stated that the crash data showed that he was travelling 35

4

miles per hour five seconds before impact and 31 miles per hour a second before impact, which showed that the brakes did not work when applied.

The trial court denied Woodward's summary judgment motion, and later granted FCA's summary judgment motion. Woodward appeals the trial court's summary judgment orders.

ANALYSIS

A.    LEGAL PRINCIPLES

1.    Summary Judgment Standard

We review a trial court's decision on a summary judgment motion de novo. *Sartin v. Estate of McPike*, 15 Wn. App. 2d 163, 172, 475 P.3d 522 (2020), *review denied*, 196 Wn.2d 1046, 481 P.3d 553 (2021). We view all the evidence and apply reasonable inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; CR 56(c).

> The party moving for summary judgment bears the initial burden to show there is no genuine issue of material fact. A moving defendant can meet this burden by demonstrating the plaintiff cannot support his claim with any evidence. After the defendant has made such a showing, the burden shifts to the plaintiff to present specific facts that reveal a genuine issue of material fact. Summary judgment is appropriate if a plaintiff fails to show sufficient evidence that creates a question of fact about an essential element on which he or she will have the burden of proof at trial.

*Sartin*, 15 Wn. App. 2d at 172 (citations omitted).

2.    Washington Product Liability Act

Woodward alleges that the braking system in his Jeep was defective. The Washington Product Liability Act (WPLA), chapter 7.72 RCW, provides the exclusive remedy for product liability claims. *Macias v. Saberhagen Holdings, Inc.*, 175 Wn.2d 402, 409, 282 P.3d 1069 (2012).

5

The WPLA imposes strict liability on the manufacturer of a defective product if the defect results in harm. *Garza v. McCain Foods, Inc.*, 124 Wn. App. 908, 916, 103 P.3d 848 (2004). Specifically, "[a] product manufacturer is subject to strict liability to a claimant if the claimant's harm was proximately caused by the fact that the product was not reasonably safe in construction." RCW 7.72.030(2).

> A product is not reasonably safe in construction if, when the product left the control of the manufacturer, the product deviated in some material way from the design specifications or performance standards of the manufacturer, or deviated in some material way from otherwise identical units of the same product line.

RCW 7.72.030(2)(a).

To determine whether a product was not reasonably safe in construction, "[t]he trier of fact shall consider whether the product was unsafe to an extent beyond that which would be contemplated by the ordinary consumer." RCW 7.72.030(3).

RCW 7.72.040(1) states that except in certain specified situations, a product seller is liable only for its own negligence.

B.    SUMMARY JUDGMENT ANALYSIS

Woodward argues that the trial court erred in granting FCA's summary judgment motion and denying his summary judgment motion because a genuine issue of material fact existed to demonstrate that the Jeep's braking system was defective and caused his injuries. We disagree.

1.    Disabled ABS

Woodward presented evidence that that the right rear wheel speed sensor was not working, which caused the ABS to become disabled. Woodward asserts that the disabled ABS, which resulted from the defective speed sensor, extended the stopping distance for his Jeep and either caused the accident or exacerbated his injuries. He claims that if the braking system had

been working properly (1) he could have stopped in time to avoid the accident or (2) the speed of impact would have been reduced, thereby reducing his injuries.

We assume without deciding that the issue with the speed sensor in a relatively new vehicle resulted from a manufacturing defect.[2] However, there was insufficient evidence to create a genuine issue of fact regarding whether that defect was a proximate cause of Woodward's accident as required under RCW 7.72.030(2).

Hallman testified that Woodward's stopping distance would have been better if the ABS had been operational, in part because the front wheels would not have skidded. However, he did not have an opinion as to how much better the stopping distance would have been. And he did not have an opinion as to specifically whether Woodward could have stopped before the collision if the ABS had been operational. Finally, he never expressed an opinion that the accident was caused by the brakes.

Woodward did not present any evidence that he could have stopped in time to avoid the collision if the ABS system had been operational. And he did not present any evidence that his injuries would have been reduced if the speed of the impact had been reduced. Therefore, he failed to create a question of fact regarding causation with respect to the disabled ABS.

2. Alleged Brake Failure

Woodward testified that he applied the brakes five seconds before the collision but the brakes did not engage and the Jeep did not stop. This testimony is inconsistent with the crash

---

[2] FCA submitted contrary evidence. Meissner stated in his declaration that there was damage to the underside of the Jeep that was not related to the accident and that only could have occurred from the Jeep driving off road or over an obstacle. Barrett also observed damage to the underside of the Jeep. Arguably, this damage explained why the rear wheel could have experienced a problem in the absence of a vehicle defect.

data, which showed that the brakes were not applied until 1.2 seconds before the collision. This testimony also is inconsistent with the undisputed evidence that (1) the brake system still would have been operational despite the disabled ABS, (2) the brakes engaged before the collision and the front tires actually skidded, (3) the brakes worked fine after the collision, and (4) Meissner found no evidence that the brakes had failed.

However, even if we assume the truth of Woodward's statement that the brakes briefly failed to engage, he did not present any evidence showing that the brake failure resulted from a manufacturing defect. The undisputed evidence showed that the defective speed sensor would not have caused a brake failure. And subsequent inspections and test drives of the Jeep showed no evidence of a failure or malfunction in the braking system. Woodward does not identify any manufacturing defect that could have caused the brakes to fail to engage for four seconds and does not provide any explanation for the alleged temporary brake failure. Therefore, he failed to create a question of fact regarding whether there was a defect in the manufacture of the Jeep that caused the alleged brake failure.

3.    Summary

We hold that the trial court did not err in granting FCA's summary judgment motion and denying Woodward's summary judgment motion because no genuine issue of fact exists regarding FCA's liability.

CONCLUSION

We affirm the trial court's order granting summary judgment in favor of FCA and denying Woodward's summary judgment motion.

No. 56322-3-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

WORSWICK, P.J.

VELJACIC, J.