# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| BRYSON TILLER and CHERI ANGELA TILLER, husband and wife, individually and on behalf of their minor son, EMERY TILLER,<br><br>Appellants,<br><br>v.<br><br>SOUTH SOUND WOMEN'S CENTER PROFESSIONAL, L.L.P., a Washington limited liability partnership,<br><br>Respondent,<br><br><br>JANE DOE I, an employee of SOUTH SOUND WOMEN'S CENTER PROFESSIONAL, L.L.P., a Washington limited partnership; JANE DOE II, an employee of SOUTH SOUND WOMEN'S CENTER PROFESSIONAL, LLP, a Washington limited partnership; MEDICAL STAFF OF CAPITAL MEDICAL CENTER, a Washington nonprofit corporation; JANE DOE III, an employee of MEDICAL STAFF OF CAPITAL MEDICAL CENTER, a Washington nonprofit corporation; CAPITAL MEDICAL CENTER PARTNER L.L.C, a foreign limited liability company; CAPITAL MEDICAL CENTER PHYSICIANS, L.L.C., a foreign limited liability company; CAPITAL MEDICAL CENTER SPECIALTY PHYSICIANS L.L.C., a foreign limited liability company; COLUMBIA CAPITAL MEDICAL CENTER LIMITED PARTNERSHIP, a Washington limited partnership; and COLUMBIA CAPITAL MEDICAL CENTER, Washington nonprofit corporation,<br><br>Defendants. | No. 57149-8-II<br><br><br>UNPUBLISHED OPINION |

MAXA, P.J. – Cheri and Bryson Tiller appeal the trial court's grant of summary judgment

in favor of South Sound Women's Center Professional LLP (SSWC) in their medical negligence

lawsuit against SSWC. The Tillers allege that SSWC was negligent in not telling Cheri[1] to seek immediate medical care when she began experiencing bleeding and abdominal pain during her 26th week of pregnancy, which they claim resulted in the premature delivery of her baby.

The evidence established that Cheri had suffered a placental abruption, which generally leads to preterm labor and delivery. The Tillers' expert testified that if a prompt referral had been made, Cheri's delivery "*could* have been" stopped despite the placental abruption. Clerk's Papers (CP) at 242 (emphasis added). The Tillers argue that this opinion was sufficient to create a question of fact regarding proximate cause and their loss of chance theory. SSWC argues that because the expert did not say that a prompt referral "*would* have been" stopped, his opinion was insufficient to avoid summary judgment regarding proximate cause. And SSWC argues that because the expert did not provide a percentage chance that the delivery could have been stopped, his opinion was insufficient to avoid summary judgment on the loss of chance theory.

We hold that the testimony of the Tillers' expert was insufficient to create a question of fact regarding both proximate cause and their alternative loss of chance theory. Accordingly, we affirm the trial court's grant of summary judgment in favor of SSWC.

FACTS

*Background*

On August 27, 2015, Cheri was 26 weeks pregnant when she noticed some bleeding and abdominal pain after intercourse. She called SSWC to leave a message about her symptoms. She received a call back from a SSWC nurse, who advised her that the symptoms were not abnormal after intercourse and that she should call if she had any more concerns.

---

[1] We use first names to distinguish between Cheri Tiller and Bryson Tiller. We mean no disrespect.

The next morning, Cheri's abdominal pain persisted and her bleeding increased to the point where she required a pad. Cheri called SSWC again. She was told that she could continue to see bleeding for another day, and that she should not worry unless the bleeding continued for 48 hours or more.

That night, Cheri's symptoms continued, and she decided to go to the emergency room. At that point, her contractions were 10 minutes or less apart. Cheri presented with symptoms of placental abruption, a condition where the placenta detaches from the uterine wall. She was given medication in an attempt to slow down the contractions, but her labor progressed. Cheri ultimately delivered a baby by caesarian section that night. Cheri's baby was admitted to the neonatal intensive care unit at Tacoma General Hospital due to his premature birth, and the baby was not discharged until three months later.

The Tillers filed suit individually and on behalf of their son against various defendants, including SSWC. The Tillers alleged that each defendant owed them a duty of care and that each defendant failed to exercise reasonable care in their treatment of Cheri and her son, causing them personal injuries that required medical care and treatment.

*Summary Judgment*

SSWC moved for summary judgment, asserting that the Tillers did not have the required expert testimony needed to establish that SSWC's alleged negligence proximately caused injury. SSWC submitted the declaration of Dr. John McEvoy, who stated that Cheri's pathology slides were indicative of placental abruption. SSWC also submitted the declaration of Dr. Kolawole Oyelese, who stated that "[t]here is no treatment to stop placental abruption, and nothing can be done to delay the delivery of the fetus." CP at 77. He opined that even if Cheri had received treatment earlier, her premature labor could not have been prevented.

In response, the Tillers submitted the declaration of Dr. Nicolas Psomiadis. Dr. Psomiadis stated his opinion that the SSWC employee who spoke with Cheri on August 28 breached the standard of care by not immediately referring Cheri to emergency care. Dr. Psomiadis disagreed with Dr. Oyelese's opinion that Cheri's labor could not have been stopped. He stated, "[h]ad that referral been made at that time it is more probable than not that Mrs. Tiller's labor *could have been* stopped or arrested." CP at 242 (emphasis added). Dr. Psomiadis pointed out that Cheri was treated at the hospital with medication and stated that "*it was possible* that those measures would accomplish an arrest or stop of Mrs. Tiller's labor." CP at 243 (emphasis added).

While the summary judgment motion was pending, the Tillers filed a motion for leave to file a second amended complaint to include a loss of chance cause of action. SSWC opposed the motion.

The trial court granted SSWC's summary judgment motion and dismissed all of Tiller's claims against SSWC. The court then denied the motion to file the second amended complaint.

Tiller appeals the trial court's grant of summary judgment in favor of SSWC.

## ANALYSIS

### A. SUMMARY JUDGMENT STANDARD

We review summary judgment orders de novo. *Sartin v. Est. of McPike*, 15 Wn. App. 2d 163, 172, 475 P.3d 522 (2020). We view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; CR 56(c).

The moving party has the initial burden to demonstrate the absence of a genuine issue of material fact. *Sartin*, 15 Wn. App. 2d at 172. A defendant can meet this burden by showing the plaintiff cannot support their claim with any evidence. *Id.* The burden then shifts to the plaintiff to present specific facts that establish a genuine issue of material fact. *Id.* "Summary judgment is appropriate if a plaintiff fails to show sufficient evidence that creates a question of fact about an essential element on which he or she will have the burden of proof at trial." *Id.*

B.     LEGAL PRINCIPLES – MEDICAL NEGLIGENCE EXPERT TESTIMONY

A plaintiff can establish medical negligence by showing that a health care provider failed to follow the accepted standard of care. RCW 7.70.030(1). In addition, a necessary element of a medical negligence claim is that this failure was a proximate cause of the plaintiff's injury. RCW 7.70.040(1)(b).

In a medical negligence action, expert testimony generally is necessary to establish both the standard of care and causation. *Frausto v. Yakima HMA, LLC*, 188 Wn.2d 227, 231-32, 393 P.3d 776 (2017). To avoid summary judgment, "[t]he expert must show that the failure to comply with the applicable standard of care proximately caused the harm incurred." *Sartin*, 15 Wn. App. 2d at 184. If the plaintiff fails to produce expert testimony regarding proximate cause, the health care provider is entitled to summary judgment on liability. *Collins v. Juergens Chiropractic, PLLC*, 13 Wn. App. 2d 782, 793, 467 P.3d 126 (2020).

Expert testimony on medical causation must be expressed in terms of " 'reasonable medical certainty or reasonable medical probability.' " *Desranleau v. Hyland's, Inc.*, 26 Wn. App. 2d 418, 438, 527 P.3d 1160 (2023) (quoting *Anderson v. Akzo Nobel Coatings, Inc.*, 172 Wn.2d 593, 607, 260 P.3d 857 (2011)). Such testimony must go beyond a mere possibility to meet the standard of reasonable medical probability. *Desranleau*, 26 Wn. App. 2d at 438.

" 'The testimony must be sufficient to establish that the injury-producing situation "probably" or "more likely than not" caused the subsequent condition, rather than that the accident or injury "might have," "could have," or "possibly did" cause the subsequent condition.' " *Rounds v. Nellcor Puritan Bennett, Inc.*, 147 Wn. App. 155, 163, 194 P.3d 274 (2008) (quoting *Merriman v. Toothaker*, 9 Wn. App. 810, 814, 515 P.2d 509 (1973)).

C.      SUFFICIENCY OF EXPERT TESTIMONY

The Tillers argue that the testimony of Dr. Psomiadis was sufficient to create a genuine issue of material fact as to whether Cheri's delivery could have been stopped or arrested.  We disagree.

Dr. Psomiadis did not testify that if SSWC had promptly referred Cheri for medical treatment, it was more probable than not that Cheri's labor *would have been* stopped or arrested. Instead, he stated that Cheri's labor *could have been* stopped or arrested.  He also stated that "it was possible" that medication would stop Cheri's labor.  CP at 243.  In other words, instead of stating that SSWC's negligence *probably* caused the claimed injury, Psomiadis stated that SSWC's negligence *possibly* caused the claimed injury.  But a mere possibility is not sufficient to satisfy the reasonable medical probability standard.  *Rounds*, 147 Wn. App. at 163.

The Tillers argue that we should interpret the term "could have" in Dr. Psomiadis's declaration as meaning the same thing as "would have."  We decline to do so.  In this context, the terms have different meanings.

We conclude that the testimony of Dr. Psomiadis was insufficient to create a genuine issue of material fact regarding causation.  Therefore, we hold that the trial court did not err in granting summary judgment in favor of SSWC on the Tillers' medical negligence claim.

D.    LOSS OF CHANCE CLAIM

The Tillers argue that even if they cannot show traditional causation on their medical negligence claim, the testimony of Dr. Psomiadis was sufficient to create a genuine issue of fact regarding a loss of chance theory. We disagree.[2]

In medical negligence cases, the loss of chance theory allows a plaintiff to satisfy the causation element even if the injury probably would not be avoided in the absence of the health care provider's negligence. *Mohr v. Grantham*, 172 Wn.2d 844, 850-57, 262 P.3d 490 (2011). The plaintiff can prevail if they show that the negligence proximately caused the loss of the chance of a better outcome. *Id.* at 857.

> In a lost chance of a better outcome claim, . . . the chance of a better outcome or recovery was reduced by professional negligence. *Mohr*, 172 Wn.2d at 857. In a traditional medical malpractice case, the negligence likely led to a worse than expected outcome. Under a lost chance of a better outcome theory, the bad result was likely even without the health care provider's negligence. But the malpractice reduced the chances of a better outcome by a percentage of 50 percent or below.

*Rash v. Providence Health & Servs.*, 183 Wn. App. 612, 631, 334 P.3d 1154 (2014). "A lost chance claim is not a distinct cause of action but an analysis within, a theory contained by, or a form of a medical malpractice cause of action." *Id.* at 629-30.

Under the lost chance theory, the plaintiff has the burden to provide expert testimony on a percentage or percentage range of a better outcome. *Christian v. Tohmeh*, 191 Wn. App. 709, 731, 366 P.3d 16 (2015). "Every Washington decision that permits recovery for a lost chance contains testimony from an expert health care provider that includes an opinion as to the percentage or range of percentage reduction in the chance of survival." *Rash*, 183 Wn. App. at

---

[2] Although the Tillers moved to amend their complaint in the trial court to add a loss of chance claim, they now assert that their loss of chance claim is within the scope of the complaint.

636. "Without that percentage, the court would not be able to determine the amount of damages to award the plaintiff, since the award is based on the percentage of loss." *Id.*

Here, Dr. Psomiadis failed to provide an expert opinion as to the percentage or percentage range for the loss of chance for a better outcome. Therefore, we hold that the Tillers did not produce sufficient evidence to avoid summary judgment on a loss of chance theory.

## CONCLUSION

We affirm the trial court's grant of summary judgment in favor of SSWC.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

LEE, J.

CHE, J.