# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| VICTOR L. WIEDEMANN SR., a single person, | No. 57650-3-II |
| Appellant, | |
| v. | |
| DAVID A. KELLER, D.D.S., P.L.L.C., a Washington Corporation; and DAVIS A. KELLER, D.D.S., individually, | UNPUBLISHED OPINION |
| Respondents. | |

CRUSER, A.C.J. — Victor Wiedemann was born with a cleft palate that caused various dental problems, and as a result, he wore a partial denture for many years. But when he lost the remaining teeth on his upper jaw, he could no longer use a partial denture because no teeth remained to anchor it in place. Wiedemann visited various dentists to consult about dental implants and eventually chose to pursue mini-implants to save money compared to conventional implants. He visited Dr. Keller, who prepared a treatment plan consisting of extractions, mini-implants, a temporary denture, and a final denture. Wiedemann wished to use money held in trust to pay for the treatment, so Dr. Keller sent the treatment plan to the trustees. The trustees approved payment for the plan, which was to cost $14,944.

After this approval, Dr. Keller's office manager, Lisa Pirello, sent the trustees a second treatment plan consisting of extractions, mini-implants, prosthetics, and crowns. It would cost

$22,000. The trust asked Pirello to explain the price increase and she told them that the first treatment plan was erroneous. The trust approved payment for the second treatment plan, despite the fact that Wiedemann had never discussed the new plan with Dr. Keller himself and that crowns were incompatible with Wiedemann's other dental work. Wiedemann underwent surgery with Dr. Keller where extractions and mini-implants were performed, but no crowns were placed, and he was given a denture. Wiedemann was unhappy with the quality of the work.

Wiedemann brought two claims against Dr. Keller: a Consumer Protection Act (CPA) claim for overbilling in the amount of $7,056 for his mini-implant services and a malpractice claim for substandard treatment and failure to obtain informed consent. Dr. Keller moved for partial summary judgment, arguing that the CPA claim should be dismissed because Wiedemann's claim was essentially a private contract dispute and did not create genuine issues of material fact as to the essential elements of a CPA claim. Dr. Keller's motion conceived of the CPA claim as it was pled: a pure overbilling issue. In response, Wiedemann argued additional CPA theories, including that Dr. Keller delivered "worthless services." Clerk's Papers (CP) at 144. The court expressed that it was not inclined to entertain the novel theories because Dr. Keller did not have fair notice of them prior to submitting his motion for summary judgment. Wiedemann expressed a desire to amend his complaint but did not make a formal motion to do so and did not present a copy of his proposed amended pleading. Wiedemann further argued that Dr. Keller impliedly consented to one of his novel theories by putting forth evidence that he considered his services "worthless." Verbatim Rep. of Proc. (VRP) at 12. The court made no formal ruling on whether it would permit Wiedemann to amend his complaint and did not clarify which CPA theories it considered when it ultimately granted Dr. Keller's motion and dismissed the CPA claim.

After the CPA claim was dismissed, the parties prepared for trial and the court granted a number of Dr. Keller's motions in limine. Specifically, it granted Dr. Keller's motion to exclude evidence of the second treatment plan in the amount of $22,000 because that plan was not relevant to the malpractice claims. It also granted Dr. Keller's motion to exclude opinion and character testimony by Pirello and dental assistant Miji Hubert,[1] but provided that these witnesses could be called for fact testimony subject to an offer of proof. It also granted Dr. Keller's motion to exclude evidence of prior patients, lawsuits, and disciplinary actions against Dr. Keller and against expert witnesses. It did not foreclose, however, that this evidence could be introduced if the door was opened to it during trial.

The case proceeded to a jury trial. After Wiedemann rested his case, having offered expert testimony that did not include an exact estimate of the cost of remediation, Dr. Keller moved for a directed verdict on the issue of economic damages. The court granted the motion, leaving the issues of liability and non-economic damages for the jury to decide. Dr. Keller put forth his defense, and Wiedemann asked to testify in rebuttal. The court denied this request, finding that Wiedemann was not offering proper rebuttal evidence but rather sought to rehash his prior testimony. Ultimately, the jury returned a verdict for Dr. Keller.

Wiedemann now appeals, arguing that the court erred in (1) granting partial summary judgment and dismissing the CPA claim; (2) granting Dr. Keller's motions in limine to exclude (a) evidence of Pirello's second treatment plan; (b) opinion and character testimony by Pirello and Hubert; (c) evidence of Dr. Keller's prior patients, lawsuits, and disciplinary actions; (d) evidence

---

[1] Miji Hubert is also referred to in the briefing and throughout the record as Miji Shaw; we use Hubert because it is apparently her preferred name.

3

of the prior patients, lawsuits, and disciplinary actions against expert witnesses; (3) granting Dr. Keller's CR 50 motion for a directed verdict as to economic damages; and (4) denying Wiedemann's request to rebut Dr. Keller's testimony.

We hold that Wiedemann is not entitled to relief. The trial court did not err in dismissing Wiedemann's CPA claim at summary judgment because Wiedemann failed to present evidence showing that Dr. Keller committed an unfair or deceptive act. Furthermore, Wiedemann has made no attempt to show that any of the excluded evidence, including his rebuttal testimony, would have materially affected the outcome of the trial; absent this showing of prejudice, any error in the trial court's evidentiary rulings is not a reversible error. We affirm the trial court.

FACTS

I. PRE-LITIGATION EVENTS

Victor Wiedemann was born September 14, 1949, with a cleft palate that required multiple surgeries and led to dental complications throughout his life. After losing four teeth in the 1970s, Wiedemann used a partial denture that relied on the strength of surrounding teeth to stay in place. In 2015 or 2016, the remaining teeth in Wiedemann's upper jaw failed, and as a result, Wiedemann could no longer use a partial denture because he had no remaining anchor teeth. He was in "misery" because he could not chew food. VRP at 352. Wiedemann sought treatment options from four or five dentists and compared prices. Wiedemann chose to pursue mini-implants because he wanted to save money compared to conventional implants.

Wiedemann consulted Dr. Keller in February 2016, and ultimately decided to undergo mini-implant surgery with Dr. Keller. His treatment was to be paid by the Judith M. Logan Living Trust, a trust created by Wiedemann's mother to disburse an inheritance to her three children. Dr.

Keller drafted a letter of medical necessity, a cost estimate, and a treatment plan and sent them to the trustees, Eric Ortner and Jeremy Wiedemann, for approval. The letter explained that the overall goal was to place implants that would serve to anchor a future prosthetic such as a denture or bridge. It outlined two phases of treatment. First, Dr. Keller would remove Wiedemann's six remaining teeth, place six mini-implants, and place a temporary denture for use while Wiedemann's extraction sites healed; second, three to four months later, Dr. Keller would place three more mini-implants and a final denture. The quoted price was $14,944. The trustees approved this treatment plan on June 16, 2016, and authorized a disbursement of $15,000.[2]

Sometime after the first treatment plan was approved, a second treatment plan was sent to the trustees. The second treatment plan, apparently created using medical billing software, proposed the same treatment as the first plan, with the addition of twelve crowns. The second treatment plan quoted a total price of $29,215 with a handwritten note saying, "I can discount to [$]22,000." CP at 23. Lisa Pirello, Dr. Keller's office manager, told the trustees that the original $14,944 treatment plan was erroneous, and the trust then approved the $22,000 payment. The trustees approved payment for the $22,000 plan on July 22, 2016.

Wiedemann saw Dr. Keller for his mini-implant surgery on August 25, 2016. He received a local anesthetic and Dr. Keller extracted six teeth. Dr. Keller then placed seven mini-implants and provided an immediate[3] denture. Dr. Keller provided follow up care to adjust the immediate

---

[2] The trustees approved $15,000 rather than $14,944 because they "understood at the time that there's a chance it could come in a little lower or a little higher" than the quoted estimate. CP at 57.

[3] An immediate denture is a temporary prosthesis that is provided to the patient immediately after an extraction; a final denture is created after taking an impression of the mouth post-extraction to achieve a better fit and more natural appearance.

denture as needed. Wiedemann received his final denture in November 2016. Then, in February 2017, Wiedemann returned to Dr. Keller's office because his denture broke. It broke four more times between February 2017 and May 2018. The first three times it broke, Dr. Keller repaired the denture. But eventually, Wiedemann decided to repair it himself to save money. Wiedemann has trouble eating due to the state of the denture and has become increasingly angry and frustrated.

In addition to the breakage of his denture, Wiedemann complains that two or three of his mini-implants fell out. He did not see any dentist for any upper jaw evaluation or repair after he stopped seeing Dr. Keller.

## II. Litigation

Wiedemann sued Dr. Keller for violating the CPA by overcharging him for mini-implants in the amount of $7,056, the difference in price between the first and second treatment plans. Wiedemann's complaint described his CPA claim as follows:

> That the actions of Dr. Keller and David A. Keller, D.D.S., P.L.L.C., d/b/a Granite Dental, in unilaterally changing the agreed price to be charged to the trust benefitting Mr. Wiedemann has damaged Mr. Wiedemann in the amount of $7,056.00, together with [prejudgment] interest, [attorney] fees and punitive damages pursuant to RCW 19.86 et seq.

*Id.* at 6. His complaint made the following factual allegations related to the alleged overcharge:

> [I]n June 2016, Dr. Keller created a treatment plan to place mini-implants in Mr. Wiedemann's mouth. The mini-implants were placed in Mr. Wiedemann's mouth on August 25, 2016. The agreed upon price for the placement of the mini-implants was $14,944.00. Nonetheless, Mr. Wiedemann was charged $22,000.00 for the dental work for which he had only agreed to pay $14,944.00.

*Id.* at 4.

> Mr. Wiedemann was charged $22,000.00 for the dental services described herein. He did not agree to pay $22,000.00 for the dental services rendered by Dr. Keller. The unilateral act by Granite Dental and Dr. Keller to change the agreed upon fee from $14,994.00 [sic] to $22,000.00 was an unfair and deceptive act.

6

*Id.* at 5. The complaint made no mention of crowns.

Wiedemann also sued Dr. Keller for medical malpractice, arguing that Dr. Keller breached the standard of care and failed to obtain Wiedemann's informed consent for the treatment provided.

A. MOTION FOR PARTIAL SUMMARY JUDGMENT

In December 2021, Dr. Keller moved for partial summary judgment, asking the court to dismiss Wiedemann's CPA claim. He argued[4] that Wiedemann failed to allege an unfair or deceptive act or practice, as required by the CPA, because the alleged $7,056 overcharge did not have the capacity to deceive a substantial portion of the public. He also argued that the alleged overcharge was a private billing dispute, that Wiedemann could not show it implicated the public interest, that Wiedemann suffered no injury to his business or property, and that Wiedemann could not show causation. He mentioned, in arguing that Wiedemann failed to show injury, that Wiedemann testified that Dr. Keller's services were "worthless," and he attached deposition testimony to that effect. *Id.* at 86.

Dr. Keller submitted, in support of his motion, a declaration describing the $22,000 treatment plan as "obviously incorrect; for example, this treatment plan listed crowns, whereas crowns were never considered or used for plaintiff." *Id.* at 12. Dr. Keller also provided an excerpt from Wiedemann's deposition testimony in which Wiedemann testified that he visited four or five dentists to inquire about implants prior to seeing Dr. Keller in 2016. In the attached testimony, Wiedemann also testified that Dr. Keller's office "made a deal with my trust for [$]22,000 in the beginning." *Id.* at 41.

---

[4] Dr. Keller also argued that Wiedemann lacked standing, but that argument was later withdrawn and is not at issue in this appeal.

Wiedemann opposed the motion, arguing that the $7,056 overcharge was an unfair and deceptive act because Dr. Keller fraudulently billed Wiedemann for crowns that were never placed. Wiedemann's response also argued four additional CPA theories beyond the overbilling theory alleged in his complaint: (1) providing worthless treatment, (2) recommending treatment that fell below the standard of care, (3) concealing a business relationship with the mini-implant manufacturer, and (4) concealing his mini-implant failure rate. Wiedemann attached a single page of his deposition transcript in which he testified that he believed he was overcharged because the treatment was "totally worthless." *Id.* at 128. Wiedemann also attached a billing statement showing the trust tendered a $22,000 payment to Dr. Keller's office on September 19, 2016.

In support of his opposition brief, Wiedemann submitted the declarations of office manager Lisa Pirello and dental assistant Miji Hubert, both of whom left Dr. Keller's practice in 2016. Pirello declared that she did not unilaterally change Wiedemann's quoted price or treatment plan and that Dr. Keller directed her to raise the price of Wiedemann's treatment to $22,000. She declared that quoting a high price and then lowering it was a customary sales tactic of Dr. Keller's. She also declared that the original $14,944 treatment plan was "not in the form of any treatment plan that I ever saw during my time working for Dr. Keller." *Id.* at 137. She declared that the $22,000 treatment plan "was the same treatment plan that Dr. Keller had proposed in February of 2016." *Id.* at 136.

Hubert declared that all the mini-implant procedures she recalled Dr. Keller performing ultimately failed. She declared that "Dr. Keller never, in my experience, delivered to the patients what he promised or what the patients expected." *Id.* at 131. She declared that while working with Dr. Keller, she "witnessed numerous short-cuts and questionable methods" and described

"apologizing for Dr. Keller's aggressive nature and his own visible frustration while practicing dentistry." *Id.* at 132. She declared that many patients complained about their mini-implants and that "[t]hese were often patients who had been quoted a specific price for the dental work that had been performed, although poorly." *Id.* at 131. She declared the Dr. Keller advertised his services on television and had a business relationship with a mini-implant manufacturer. She further declared that Dr. Keller was "obsessed" with revenue and did not provide any treatment without first verifying that financial arrangements were made with that patient. *Id.* at 132. And she declared that Dr. Keller's claim that he was unaware of the price increase in the second treatment plan was contrary to his usual custom.

Dr. Keller replied, arguing in part that Wiedemann could not expand his CPA claim to encompass new theories that were not alleged in his complaint. Attached to his reply brief, Dr. Keller provided deposition testimony from Eric Ortner indicating that he recalled reviewing and approving the original treatment plan. Dr. Keller also provided Wiedemann's deposition testimony affirming that the services in the initial treatment plan "look[ed] correct" and that he agreed with that treatment plan when it was proposed. *Id.* at 173-74.

Dr. Keller declared that the second treatment plan "does not reflect the services/products I had discussed with Mr. Wiedemann." *Id.* at 188. He further declared that a treatment plan proposing to install crowns and provide a denture would be "impossible because a denture prosthesis cannot be attached to crowns. It must be attached directly to the mini-implants." *Id.* Dr. Keller also provided deposition testimony from Wiedemann's sister, Kim Ortner, who testified:

> Upon reviewing Mr. Wiedemann's record[s] and comparing them to the treatment plan, I was shocked at what I saw. Mr. Wiedemann was charged $15,864 for 12 ceramic crowns that were never placed in his mouth. This would have been impossible because Mr. Wiedemann does not possess teeth onto which those

> crowns were supposedly placed. Crowns cannot be placed where teeth do not exist. It is physically impossible.

*Id.* at 184.

At oral argument on the summary judgment motion, Dr. Keller again objected to Wiedemann's novel CPA theories, arguing he did not have notice of the theories because these theories had not been pled. The court agreed, noting that the CPA claim was pled specifically to encompass the change in price from $14,944 to $22,000 and did not encompass the additional theories that Wiedemann argued in response to summary judgment. Wiedemann argued that, at minimum, his theory of worthless services could be tried by implication under CR 15(b) because Dr. Keller's motion for partial summary judgment had quoted a portion of Wiedemann's deposition where he described the services as "worthless." VRP at 7. Dr. Keller objected, arguing that simply mentioning deposition testimony did not amount to raising a theory of worthless services on behalf of Wiedemann. The trial court did not address the trial by implication argument and allowed Wiedemann's counsel to make his argument about both the overbilling and worthless services. The court ultimately granted the motion for partial summary judgment and dismissed the CPA claim.

### B. MOTIONS IN LIMINE

In preparation for the medical malpractice trial, the court heard motions in limine. First, it granted Dr. Keller's motion to exclude any exhibits or references related to the second treatment plan or the resulting increase in price. Second, it granted Dr. Keller's motion to limit the testimony of Pirello and Hubert to facts based on personal knowledge under ER 602. In granting this motion, the court maintained that it would allow fact evidence from these witnesses subject to an offer of proof to ensure that they would offer only relevant fact testimony. Third, the court granted Dr.

Keller's motion to exclude references to his other patients, prior lawsuits, and past board actions. Fourth, it granted Dr. Keller's motion to exclude all evidence about the prior patients, lawsuits, and disciplinary actions of the experts for both sides. In granting this motion, the court noted that the parties could make an offer of proof outside the jury's presence if they thought the door was opened to such testimony during trial.

C. TRIAL

A jury was empaneled and Wiedemann argued that Dr. Keller breached the standard of care by (1) failing to immediately refer Wiedemann to a specialist given the complexity of Wiedemann's medical and dental history; (2) failing to inform Wiedemann that his case would be complex and difficult to treat; (3) failing to take appropriate scans before treatment; (4) failing to keep adequate records; (5) placing the mini-implants incorrectly; and (6) failing to obtain informed consent. Dr. Keller argued that adequate care was provided and that any negative outcome was not caused by negligence. After Dr. Keller rested his case, Wiedemann's attorney asked to call Wiedemann to offer rebuttal testimony.[5] Dr. Keller's attorney objected on the ground that Wiedemann's attorney had not stated a specific reason for the rebuttal testimony. Wiedemann's attorney explained,

> [Wiedemann] wants to rebut the -- Dr. Keller's claim that he was happy with his stuff. He -- he feels that Dr. Keller's inaccurate in his recollection of what he told my client about what was planned. And he wants to point those inconsistencies out.
>
> He doesn't believe any of this stuff was told to him about alternatives and all of this time. He -- he wants to testify that he had very little contact really in terms of -- of that particular issue.

---

[5] Wiedemann also hoped to call his expert witness and his sister, Kim Ortner, in rebuttal. The court denied these requests, which are not at issue in this appeal.

*Id.* at 1012. The court noted that this was improper rebuttal testimony because the topic had been fully developed and "[y]ou don't get to just rebut by repeating your case again." *Id.* at 1014. It denied the request.

The jury returned a verdict finding that Dr. Keller was not negligent. This appeal follows.

DISCUSSION

I. SUMMARY JUDGMENT

Wiedemann argues that the court erred in granting partial summary judgment to Dr. Keller and dismissing Wiedemann's CPA claim. We disagree and hold that the CPA claim was properly dismissed because Wiedemann failed to create a genuine dispute of material fact as to whether Dr. Keller committed an unfair or deceptive act or practice within the meaning of the CPA.

A. LEGAL PRINCIPLES

We review summary judgment rulings de novo, viewing the facts in the light most favorable to the nonmoving party. *Davies v. Multicare Health Sys.*, 199 Wn.2d 608, 616, 510 P.3d 346 (2022). Summary judgment is properly granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We consider only the evidence that was brought to the trial court's attention. RAP 9.12.

The initial burden lies with the moving party to show there is no genuine issue of material fact. *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 183, 401 P.3d 468 (2017). After the moving party has shown an absence of evidence supporting their opponent's case, "the burden shifts to the nonmoving party to set forth specific facts that rebut the moving party's contentions and show a genuine issue of material fact." *Id.*

To rebut the moving party's contentions, the nonmoving party's response must be based on "personal knowledge, must set forth facts that would be admissible in evidence, and must show affirmatively that the declarant of such facts is competent to testify to the matters stated therein." *Lane v. Harborview Med. Ctr.*, 154 Wn. App. 279, 286, 227 P.3d 297 (2010). Conclusory statements, speculation, and argumentative assertions are insufficient to create a genuine issue of material fact. *Greenhalgh v. Dep't of Corrs.*, 160 Wn. App. 706, 714, 248 P.3d 150 (2011). A genuine issue of material fact exists where the evidence would allow a reasonable jury to return a verdict in favor of the nonmoving party. *Zonnebloem*, 200 Wn. App. at 182-83.

The CPA provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. Its purpose is to protect the public and it is to be liberally construed to that end. RCW 19.86.920. The CPA may be enforced by both our attorney general and private plaintiffs. RCW 19.86.080, .090. Private plaintiffs must show: " '(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation.' " *Young v. Toyota Motor Sales, U.S.A.*, 196 Wn.2d 310, 316, 472 P.3d 990 (2020) (quoting *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37, 204 P.3d 885 (2009)). *See also Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986) (providing five elements for private CPA claims). Because the plaintiff bears the burden of proving each element of their CPA claim, summary judgment is proper if the plaintiff fails to create a genuine dispute of material fact as to any one of the elements. *See Sartin v. Estate of McPike*, 15 Wn. App. 2d 163, 172, 475 P.3d 522 (2020) ("Summary judgment is appropriate if a plaintiff fails to show sufficient evidence that creates a question of fact about an essential element on which he or she will have the burden of

proof at trial."). At issue here is the first element, "an unfair or deceptive act or practice." *Young*, 196 Wn.2d at 316.

Whether an act is "unfair or deceptive" is a legal question if the operative facts are not in dispute. *Id.* at 317. Plaintiffs must show that the act " 'had the capacity to deceive a substantial portion of the public.' " *Id.* (quoting *Panag*, 166 Wn.2d at 47). " 'Deception exists if there is a representation, omission or practice that is likely to mislead a reasonable consumer.' " *Id.* (internal quotation marks omitted) (quoting *Panag*, 166 Wn.2d at 50). It does not require showing actual deception, reliance, or materiality. *Id.* at 317-18. "The purpose of the capacity-to-deceive test is to deter deceptive conduct *before* injury occurs." *Hangman Ridge*, 105 Wn.2d at 785.

B. APPLICATION

Our de novo review of the court's summary judgment ruling asks whether Wiedemann has failed to show a genuine dispute of material fact as to any of the five elements of his CPA claim. Here, Wiedemann has failed to raise a factual dispute as to whether Dr. Keller performed an unfair or deceptive act or practice. We therefore affirm the trial court's dismissal without reaching the remaining elements of Wiedemann's CPA claim.

*i. Alleged $7,056 Overcharge*

Wiedemann alleged in his complaint[6] that Dr. Keller violated the CPA by "unilaterally changing the agreed price to be charged" and overcharging him in the amount of $7,056 for his mini-implants. CP at 6. Two undisputed facts are fatal to Wiedemann's claim. First, it is undisputed that Wiedemann and Dr. Keller, in the patient consultation, agreed to a $14,944 treatment plan that included six extractions, nine mini-implants, a temporary denture, and a final denture. Second, it is undisputed that Wiedemann later received from Keller's office a different treatment plan—that Wiedemann had never discussed with Keller himself—that included twelve crowns, a service that did not appear in the original treatment plan. The price for this new treatment plan was $22,000.

Taking the facts in the light most favorable to Wiedemann, they do not support a finding of unfair or deceptive practice. To the extent that Wiedemann's claim is clear, he appears to make two alternative arguments. First, that he sought crowns all along, not just mini-implants, and that he was initially baited with a lower price quote for the full treatment (including crowns) of $14,944

---

[6] Wiedemann argues on appeal that Dr. Keller was deceptive when he (1) billed for crowns never placed, (2) provided worthless treatment, (3) recommended treatment falling below the standard of care, (4) changing the treatment plan without consent, (5) concealing a business relationship with the mini-implant manufacturer, (6) deceptively marketing the mini-implants, and (7) raising the price upon learning that it would be paid by a trust. However, Wiedemann raised only one theory of unfair or deceptive practice in his complaint: the overcharge of $7,056.

At the summary judgment hearing, Wiedemann attempted to raise four additional theories: providing worthless services, failing to place crowns as promised in the treatment plan, failing to inform Wiedemann of a business relationship with mini-implant manufacturer, and failing to inform Wiedemann of his failure rate. The trial court initially refused to consider the novel theories, noting that the complaint had not been amended. Wiedemann went on to argue that in the very least, his theory of worthless services could be tried by implication because Keller, in his written motion for partial summary judgment, had quoted the deposition of Wiedemann describing the services as worthless. The trial court allowed further argument on the worthless services theory without ruling on whether it was tried by implication pursuant to CR 15(b). The remaining issues were neither tried below nor pled in an amended complaint. Accordingly, we address only the initial overbilling theory and the worthless services theory.

and the price was unilaterally increased to $22,000 without his approval. If this is his claim, it is belied by his own evidence showing that a second treatment plan containing the crowns bearing the price of $22,000 was sent to him by Keller's office prior to the surgery and the trust approved payment for that amount. This evidence does not establish an unfair or deceptive practice because the $22,000 price was agreed to by Wiedemann. Indeed, Wiedemann testified at his own deposition that Dr. Keller's office "made a deal with my trust for [$]22,000." CP at 41. The undisputed evidence shows that Wiedemann's price was not changed "unilaterally."[7] *Id.* at 6.

Wiedemann's second theory appears to be that he never wanted crowns to be a part of his treatment plan, and they were added to his billing statement as a way of deceptively raising the price of his mini-implants (the service he *did* want). Here again, Wiedemann does not show an unfair or deceptive practice. The unrebutted evidence shows that when Wiedemann's trust tendered a $22,000 payment to Dr. Keller's office, the trust knew or should have known that crowns were contained in that plan. This is not a case in which the parties reached a deal for mini-implants at a particular price, only for Dr. Keller to then raise the price *for the same services* when it was too late for Wiedemann to renegotiate the deal or seek treatment elsewhere. Wiedemann shows, at most, that he was overbilled by $7,056 for services that should have cost only $14,944. Whatever the reason for this overbilling, Wiedemann does not show that it was the result of Keller baiting him into a service contract for $22,000 worth of services while intending to provide services that were only worth $14,944. Thus, Wiedemann has failed to create a genuine dispute of material fact as to whether Dr. Keller committed " 'a representation, omission or practice that is

---

[7] At best, Wiedemann shows that Keller may have breached his services contract with Wiedemann by not actually installing crowns. But such a claim is not before us.

likely to mislead a reasonable consumer.' " *Young*, 196 Wn.2d at 317 (internal quotation marks omitted) (quoting *Panag*, 166 Wn.2d at 50).

Because Wiedemann has failed to put forth evidence that would allow a reasonable jury to find that Dr. Keller deceptively overcharged Wiedemann for the mini-implant services he performed, this theory of unfair or deceptive practice fails as a matter of law.

*ii. Provision of Worthless Services*

In addition to his overbilling theory, Wiedemann argues that Dr. Keller deceptively and unfairly charged him for "worthless services." Br. of Appellant at 14. Wiedemann's complaint did not contain such a theory, but Wiedemann argued before the trial court that it was tried by implication when Dr. Keller put forth Wiedemann's deposition testimony stating that the services were worthless. The trial court expressed that allowing novel theories at the summary judgment stage would deprive Dr. Keller of adequate notice, but it nonetheless allowed Wiedemann to argue this theory before granting Dr. Keller's motion for summary judgment. Wiedemann argued that because "Dr. Keller is very inept" in installing mini-implants, it was deceptive for Dr. Keller to contract with Wiedemann to provide those services. VRP at 7.

Even assuming the worthless services theory was tried by implication under CR 15, it does not support Wiedemann's CPA claim. Wiedemann does not explain how ineptitude in dentistry constitutes an unfair or deceptive act or practice that would violate the CPA. He cites no authority to that effect in his briefing, nor did he present such authority to the trial court. Where, as here, "no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). Wiedemann's dissatisfaction with

Keller's performance as a dentist goes to his malpractice claim, and does not constitute a violation of the CPA.

Because Wiedemann fails to create a dispute of material fact as to each element of his CPA claim, summary judgment in favor of Keller is proper.

## II. EVIDENTIARY RULINGS

Wiedemann argues that the court erred in granting several of Dr. Keller's motions in limine to exclude certain evidence, and that he should be granted a new trial. He also argues that the trial court erred when it denied his request to offer rebuttal testimony after Dr. Keller rested his defense case. The problem with Wiedemann's claim regarding each of these decisions by the trial court is his total failure to demonstrate, or even argue, that he suffered prejudice from these decisions. This failure precludes relief for Wiedemann. Moreover, even if Wiedemann had adequately argued prejudice, we find no abuse of discretion in the trial court's rulings.

A. LEGAL PRINCIPLES

When an appellant challenges a trial court's evidentiary rulings, we ordinarily review the trial court's decision for abuse of discretion, deferring to the judgment of the trial court unless no reasonable person would agree with the trial court. *Gerlach v. Cove Apartments, LLC*, 196 Wn.2d 111, 119, 471 P.3d 181 (2020). However, an erroneous evidentiary ruling merits reversal only if the error is prejudicial. *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997). An error is " 'not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.' " *Id.* (quoting *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981)).

B. APPLICATION

Wiedemann does not show, or even attempt to show, a reasonable probability that the outcome of the trial was materially affected by the evidentiary rulings he complains of. He does not mention prejudice at any point in his brief. Rather, he merely argues that the evidentiary rulings were erroneous and asserts, without argument, that he was deprived of a fair trial. But "[p]assing treatment of an issue or lack of reasoned argument" does not merit our consideration. *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998). Because Wiedemann does not argue, much less demonstrate, that he was prejudiced by any of the trial court's evidentiary rulings we decline to examine each of the rulings for an abuse of discretion.[8]

We affirm each of the court's challenged evidentiary rulings.

CONCLUSION

We affirm the trial court.[9]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

---

[8] RAP 10.3(a)(6) directs each party to supply in its brief, "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record."

[9] Wiedemann also assigns error to the trial court's grant of a directed verdict in favor of Keller under CR 50 on the question of economic damages. Our resolution of the assignments of error related to the trial renders our consideration of this issue unnecessary.

No. 57650-3-II

CRUSER, A.C.J.

We concur:

LEE, J.

CHE, J.